The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Frank M. ORONA, Defendant–Appellant.

No. 91CA0121.

Colorado Court of Appeals, Div. III.

March 23, 1995.

Rehearing Denied June 1, 1995.

Certiorari Denied Dec. 11, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John J. Krause, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Terri L. Brake, Chief Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge HUME.

Defendant, Frank Orona, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree murder after deliberation, seven counts of forgery, and one count of giving false information to a pawnbroker. We affirm.

The prosecution charged defendant with first degree murder under theories of both felony murder and murder after deliberation, claiming that defendant stole the victim's credit cards, forced him to cash two checks to empty his bank accounts, and then intentionally and deliberately killed him.

Defendant admitted that he killed the victim, but asserted the affirmative defense of intoxication. He claimed that, because he had been drinking, he had only a partial memory of the killing and subsequent events and that, in killing the victim, he had reacted impulsively to an unwanted sexual overture rather than intentionally and after deliberation.

After a three-week trial, a death-qualified jury found defendant guilty of first degree murder under both theories. The same jury later was unable to agree upon imposition of the death penalty, thus requiring imposition of a sentence to life imprisonment without parole. The trial court then dismissed that part of the verdict based on felony murder and sentenced defendant to a term of imprisonment for life without parole for murder after deliberation, to run concurrently with sentences of six years on each of the forgery counts and four years on the false information count.

## I.

■ Defendant's principal contention is that the trial court erred in refusing to submit his tendered jury instructions concerning application of the intoxication defense to the "after deliberation" element of first degree murder, claiming that "after deliberation" is a part of the mental culpability requirement for first degree murder. The trial court determined that the "after deliberation" requirement was not part of the specific intent culpability element contained in § 18–3–102(1)(a), C.R.S. (1986 Repl.Vol. 8B). Defendant contends that this ruling improperly relieved the prosecution of its burden to disprove intoxication as an affirmative defense to the specific intent requirement of the murder charge and that this error warrants a new trial. We disagree.

A person commits first degree murder if, after deliberation and with intent to cause the death of a person other than himself, he causes the death of that person or of another person. Section 18–3–102(1)(a), C.R.S. (1986 Repl.Vol. 8B).

Relevant evidence of a defendant's self-induced intoxication may be offered to negate the existence of the specific intent requirement. See § 18–1–804(1), C.R.S. (1986 Repl. Vol. 8B).

Section 18–1–501, et seq., C.R.S. (1986 Repl.Vol. 8B) defines culpability requirements for all offenses contained within the criminal code. Section 18–1–501(4), C.R.S. (1986 Repl.Vol. 8B) defines "culpable mental state" as "intentionally, or with intent, or knowingly, or willfully, or recklessly, or with criminal negligence...." Section 18–1–501(5), C.R.S. (1986 Repl.Vol. 8B), states that a person acts "intentionally or 'with intent' when his [or her] conscious objective is to cause the specific result proscribed by the statute defining the offense."

Accordingly, as applied to § 18–3–102(1)(a), the requisite specific intent is the intent to cause the death of a person other

than the perpetrator. While that statute also requires that the act of killing be accomplished "after deliberation," we fail to perceive that that requisite element is a part of the culpable mental state required for first degree murder.

"After deliberation" is not included in the statutory definitions of "culpable mental state," "intentionally," or "with intent." Rather, that term is defined separately in § 18–3–101(3), C.R.S. (1986 Repl.Vol. 8B) as meaning "not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act." Thus, under § 18–3–101(3) the term "after deliberation" is "separate from" and "in addition to" the requisite culpable mental state of "intentionally." In this regard, we note that § 18–3–102(1)(a) specifies that murder in the first degree is committed by a perpetrator who acts both "after deliberation *and* with the intent to cause the death of a person...." (emphasis added)

Thus, the statute defining murder after deliberation, the culpability section of the criminal code, and the section of the code dealing with intoxication as a defense are consistent in treating "intent" and "after deliberation" as separate concepts. Hence, we perceive no statutory indication that intoxication should be separately considered as a defense to the "after deliberation" element as well as the element of "with intent to cause death."

Defendant has cited various Colorado cases in support of his argument that "after deliberation" is a part of the intent element under § 18–3–102(1)(a). We do not find the cited cases persuasive.

First, many of the cited cases deal with the first degree murder statute in effect prior to the adoption of § 18–3–102 in its present form. *Compare* Colo.Sess.Laws 1971, ch. 121, § 40–3–102(1)(a) at 418 *with* § 18–3–102(1)(a).

Section 40–3–102(1)(a) defined murder in the first degree as a killing caused "with premeditated intent to cause the death of a person...." The term "after deliberation" was not incorporated into the first degree

murder statute until 1974. *See* Colo.Sess. laws 1974, ch. 52, §§ 40–3–101(1)(a) and 40–3–102(1)(a) at 251.

Cases dealing with the concept of murder after deliberation generally recognize a distinction between the requisite mental state of "intentionally" or "with intent" and the additional necessary element of "after deliberation." In *People v. District Court,* 779 P.2d 385, 388 (Colo.1989), the supreme court discussed the separate elements of intent and deliberation and concluded:

> The element of deliberation, *like intent,* can rarely be proven other than through circumstantial or indirect evidence. (emphasis added)

In likening the two elements, the court implied that they were not the same and that one was not included within the other. *See also People v. Bartowsheski,* 661 P.2d 235 (Colo.1983) and *People v. Madson,* 638 P.2d 18 (Colo.1981). And, contrary to defendant's argument, we find nothing in the majority opinion of *Key v. People,* 715 P.2d 319 (Colo. 1986) that would compel the construction he advocates here.

■ In addition, all jury instructions must be read and considered together, and if, collectively, they adequately inform the jury of the law, there is no reversible error. *People v. Manier,* 184 Colo. 44, 518 P.2d 811 (1974).

■ Here, the trial court submitted instructions advising the jury that:

> It is an affirmative defense to the crime of First Degree Murder (after deliberation) that the defendant, because of voluntary intoxication, did not have the intent required by that offense.

Other instructions gave statutory definitions of "intentionally" or "with intent," the statutory definition of "after deliberation," and an instruction specifying that the prosecution bore the burden of proving defendant's guilt beyond a reasonable doubt as to the affirmative defense.

Further, the trial court gave defendant's theory-of-the-case instruction stating that he stabbed the victim in reaction to the latter's unsolicited and undesired sexual advances, and that:

Defendant claims that his stabbing of the deceased was done out of anger and fear, that his drinking poorly affected his judgment, and that he reacted emotionally and impulsively, without thinking before he reacted.

Because the instructions as a whole fully and adequately informed the jury on the law of specific intent and after deliberation, the court committed no error in refusing defendant's additionally tendered instruction as to the concept of "after deliberation."

## II.

Defendant also raises a number of other issues, including that the trial court committed reversible error in denying his challenges for cause as to three jurors. We perceive no error.

■ A defendant has the fundamental right to a fair trial by a panel of impartial jurors and the trial court must exclude prejudiced or biased persons from the jury. However, the court's denial of a challenge for cause will be set aside only if the record shows a clear abuse of discretion. *People v. Ferrero,* 874 P.2d 468 (Colo.App.1993).

Here, defendant claimed that the challenged jurors could not be impartial because they held preconceived notions about the death penalty and/or the use of alcohol as a defense to murder. The trial court denied each challenge, after allowing and considering extensive voir dire as to each challenged juror's ability to follow the law as given by the court.

■ A prospective juror's expression of concern or indication of preconceived belief does not automatically require exclusion for cause. *People v. Russo,* 713 P.2d 356 (Colo. 1986). If the court is satisfied that the juror will be able to set aside the preconceived notion and render an impartial verdict according to the law and evidence admitted at trial, the juror should not be disqualified. *People v. Drake,* 748 P.2d 1237 (Colo.1988).

■ In making this determination, the court may consider a juror's assurances that he or she can fairly and impartially serve on the case. *People v. Sandoval,* 733 P.2d 319 (Colo.1987).

■ An appellate court cannot displace the trial court in its evaluation of credibility. The appellate court is not in the best position to judge which of a juror's inconsistent or equivocal answers rings the most true. It is for the trial court to perform this evaluation. *People v. Davis,* 794 P.2d 159 (Colo.1990).

■ Here, although there are portions of the voir dire examination of each of the challenged jurors which indicate a predisposition in favor of the death penalty, other questions also indicate each juror's willingness to apply the law as given by the court. The record is similar relative to the issue of intoxication as a defense. Since there is record support for the trial court's findings that each challenged juror demonstrated the ability to apply the law to the evidence, the court did not abuse its discretion in denying defendant's challenges for cause.

## III.

Defendant also contends that extensive prosecutorial misconduct prevented him from receiving a fair trial. We do not agree.

Defendant cites numerous examples from the record in an effort to demonstrate that the prosecutors made statements and offered testimony and evidence calculated to incite juror sympathy, made improper remarks during closing argument, and engaged in improper cross-examination of defendant and an expert witness by attempting to imply that defendant, with access to police and investigative reports, "made up" a story to explain the evidence against him.

Some of defendant's examples of misconduct involve matters to which objections were made and ruled upon by the trial court. However, defendant has framed his contentions of error on appeal as prosecutorial misconduct rather than as judicial error in those instances.

■ In determining whether prosecutorial misconduct mandates a new trial, an appellate court must evaluate the severity and frequency of misconduct, any curative measures taken by the trial court to alleviate the

misconduct, and the likelihood that the misconduct constituted a material factor leading to defendant's conviction. Reversible error exists only if there are grounds to believe that the jury was substantially prejudiced by improper conduct. *People v. Jones,* 832 P.2d 1036 (Colo.App.1991).

One of the instances of asserted prosecutorial misconduct involves the offer and admission of a videotape depicting the victim's body and the area surrounding the place it was found. The videotape depiction of the body including signs of decomposition and parasite infestation, while unpleasant, is not so inflammatory that its probative value as to the manner and time of death is far outweighed by its prejudicial impact. Accordingly, in our view, this example of claimed prosecutorial excess, either singly or with other examples, does not require reversal of the judgment of conviction.

Many of the statements challenged by defendant were proper comments on facts in evidence or were arguments for reasonable inferences that could be made from the evidence. *See People v. Rodriguez,* 794 P.2d 964 (Colo.1990). Some remarks were corrected by admonishment to counsel and/or appropriate instructions to the jury by the court. Absent a contrary showing, it is presumed that the jury understood and heeded the court's instructions. *People v. Valdez,* 725 P.2d 29 (Colo.App.1986).

While certain comments and conduct of trial counsel for both sides were questionable and occasionally improper, considered either in isolation or cumulatively, such instances were not so prejudicial or pervasive as to deprive defendant of a fair trial. Hence, reversal of the convictions is unwarranted on this record. *See People v. Rubanowitz,* 688 P.2d 231 (Colo.1984). In our view, the prosecutorial excesses relied upon by defendant are not so great as to have caused a miscarriage of justice warranting a new trial. *See Harris v. People,* 888 P.2d 259 (Colo.1995).

## IV.

Defendant also contends that the trial court erred when it refused to admit hearsay evidence about a jailhouse confession he made to another prisoner. We perceive no error.

The day after defendant's arrest, he told his cellmate that he had been drunk and "blew it" with the victim. The prisoner reported the conversation to a police detective. Defendant then attempted to introduce this statement through the testimony of both the prisoner and the detective in an effort to establish that the killing was unintentional and resulted from his intoxication.

The trial court ruled that neither witness could testify about defendant's statement because it was hearsay and did not fall under any exception to the hearsay rule. Defendant asserts that the statement is admissible pursuant to CRE 804(b)(3), CRE 803(24), and CRE 806. We disagree.

Hearsay is a statement other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. CRE 801(c).

The trial court has considerable discretion in applying exceptions to the hearsay rule. *People v. Fuller,* 788 P.2d 741 (Colo. 1990). Its decision concerning admissibility of evidence under these exceptions will be upheld unless there is a definite and firm conviction by the reviewing court that the trial court made a clear error of judgment. *Hock v. New York Life Insurance Co.,* 876 P.2d 1242 (Colo.1994).

The exceptions defendant attempted to invoke pursuant to CRE 804(b)(3) and 803(24) are available only if corroborating circumstances clearly indicate the trustworthiness of the statement. *People v. Fuller, supra.*

Here, although the offered statement contained an admission that defendant had killed the victim, its attempted use was for the purpose of mitigating the first degree murder charge. Thus, the statement was for, rather than against, defendant's interest. *See People v. Atkins,* 844 P.2d 1196 (Colo. App.1992); *People v. Shields,* 701 P.2d 133 (Colo.App.1985). And, a defendant's self-serving declaration is generally not admissible because there is nothing to guarantee its

reliability. *People v. Abeyta*, 728 P.2d 327 (Colo.App.1986).

Although defendant may support his credibility through the use of hearsay pursuant to CRE 806, because there was no corroboration of the statement's trustworthiness here, it could not be used to establish his credibility but could only be offered for the truth of the matter asserted.

Under these circumstances, the trial court did not abuse its discretion when it ruled these exceptions to the hearsay rule inapplicable to defendant's proffered statement.

## V.

Lastly, defendant contends that the court erred when it failed to suppress the use of a prior felony conviction for impeachment purposes. We disagree.

In 1985, defendant entered a *nolo contendere* plea to a first degree burglary charge in exchange for the dismissal of other charges filed against him, and he was sentenced to probation.

When the prosecution in the current case sought to use the 1985 conviction to impeach defendant at trial, defendant challenged the validity of the plea on the ground that the 1985 advisement of his rights was constitutionally insufficient.

■ When a defendant challenges a prior conviction and sentence, he must initially make a prima facie showing that the guilty plea was constitutionally infirm. *People v. Wade*, 708 P.2d 1366 (Colo.1985).

■ Due process of law requires that a plea of guilty be made knowingly and voluntarily. *Blehm v. People*, 817 P.2d 987 (Colo. 1991). A defendant must also be cognizant of the direct consequences of a conviction in order to satisfy the due process concern that a plea be made with full understanding of its consequences. *People v. Pozo*, 746 P.2d 523 (Colo.1987).

■ No formal litany is required before a court may accept a plea of guilty. Rather, the record as a whole must amply demonstrate that the court has made the defendant aware of his or her various rights and has explained the critical elements in terms which are understandable. *Lacy v. People*, 775 P.2d 1 (Colo.1989), *cert. denied*, 493 U.S. 944, 110 S.Ct. 350, 107 L.Ed.2d 337 (1989).

■ Here, the record presented to the trial court reflects that several individuals were scheduled to appear before the same court on the day defendant entered his 1985 plea. The individual appearing just prior to defendant was specifically advised of the right to a trial by jury and the consequences of a *nolo contendere* plea.

During the 1985 hearing, defendant specifically acknowledged that he had heard and understood the previous advisement with respect to the right to trial. Because he offered no evidence to establish that his responses at that hearing did not accurately reflect an understanding waiver of his rights, the court's failure to advise him personally of his rights does not require that his guilty plea be vacated.

■ Additionally, because defendant ultimately received probation in the 1985 case, the court's failure to advise him of the possible mitigating and aggravating circumstances that might have affected his sentence range does not render his plea invalid. *See People v. Tyus*, 776 P.2d 1143 (Colo.App.1989). *See also People v. Silva*, 782 P.2d 846 (Colo.App. 1989) (no reversible error when inaccuracies in advisement could not have induced defendant to plead guilty).

■ And, although the court initially gave defendant an incomplete definition of the crime for which he was charged, when it provided an illustration of the crime in language easily understandable by persons of ordinary intelligence and asked about defendant's understanding of the charge, it adequately advised defendant and provided a fully sufficient basis for the court's determination that the plea was given freely, voluntarily, and intelligently. *See People v. District Court*, 868 P.2d 400 (Colo.1994).

It is significant that defendant was represented by counsel prior to and during the proceeding and that defendant acknowledged that his attorney discussed the charge and

the effect of a guilty plea with him. *See People v. Cabral,* 698 P.2d 234 (Colo.1985).

Additionally, it was appropriate for the court to consider defendant's prior criminal history in its evaluation of his understanding of the charge to which he pled guilty. *See People v. Moore,* 636 P.2d 1290 (Colo.App.1981).

Thus, the court in the current proceeding did not err when it determined that defendant's 1985 plea was entered knowingly and voluntarily and allowed the prosecution to use that plea to impeach defendant's testimony.

Judgment affirmed.

JONES and TAUBMAN, JJ., concur.