**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Allen THOMAS, Jr., Defendant–Appellant.**

No. 93CA1209.

Colorado Court of Appeals,
Div. V.

June 26, 1997.

Rehearing Denied Oct. 23, 1997.

Certiorari Denied Sept. 21, 1998.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Laurie A. Booras, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Terri L. Brake, Deputy Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge RULAND.

Defendant, Allen Thomas, Jr., appeals from the judgments of conviction entered on jury verdicts finding him guilty of first degree murder after deliberation, first degree felony murder, first degree sexual assault, second degree burglary, aggravated robbery, and robbery of the elderly. We affirm.

The victim was sexually assaulted and then brutally murdered in her home in connection with a robbery. The position of the defense at trial was that defendant had committed the homicide, but that he was under the influence of drugs at the time to the extent that the crime constituted second degree murder. Although the death penalty was requested by the prosecution, the jury declined to impose it.

## I

After the jury had been selected, defendant requested an *ex parte* conference with the court to express his concerns about statements made during voir dire by a member of the defense team. These statements suggested that defendant had committed the homicide but that the offense constituted second degree murder and not first. One of the defense attorneys explained to the court that, because of defendant's remorse and concern about the homicide, he wished to proceed to trial and receive the death penalty for first degree murder.

Defendant then indicated to the court that he wished either to have the jury panel discharged or to represent himself at trial without counsel. The court denied defendant's request for a new jury panel and advised defendant extensively concerning his self-representation and the perils of that decision. Defendant then indicated that he either wanted to represent himself or, if the defense team represented him, to remain in jail during the trial.

The court concluded to recess the trial for that afternoon and evening in order for the defense team to confer with defendant. The court required that a decision be made by the following morning.

Defendant appeared the following morning with the defense team and announced his decision not to attend the trial but to be represented by counsel. The court advised defendant about the ramifications of his decision not to appear for the trial. Nevertheless, defendant again confirmed that he did not wish to attend the trial.

Lead defense counsel requested that defendant at least attend the trial during opening statements. The court agreed to this alternative. However, defendant refused.

At defendant's request, he was returned to the jail but with the understanding that he could appear for trial at any time. The court further ordered the sheriff to return defendant from the jail to the courtroom each morning during the trial to determine if defendant had changed his mind.

Lead defense counsel then requested a second continuance to convince defendant of the need for his appearance at least for opening statements. Counsel indicated her concern that the defense team could not represent defendant effectively if he were not

present. Counsel further indicated that defendant's decision not to appear had been made without the knowledge that, if he did not attend the trial, then the defense team also would decline to appear. Counsel acknowledged her expectation that she might be held in contempt of court for failure to appear and that she was prepared for this sanction.

The court denied the request for a continuance on the basis that the case had been pending for more than two years and that one continuance had already been provided for counsel to discuss the appearance issues with defendant. The court directed the defense team to defend the defendant, but stated that the case would proceed with or without counsel present.

The defense team left the courtroom and the trial began. The prosecution presented its opening statement, and one witness was questioned on direct examination. Approximately 80 minutes of trial time elapsed.

At that juncture, the defense team appeared, indicated that they would proceed with the trial, and requested permission to make an opening statement at that time. The request was granted and defense counsel was also furnished the opportunity to cross-examine the initial witness called by the prosecution.

Based upon the foregoing events, defendant now contends that his federal and state constitutional rights to assistance of counsel were denied when the court commenced the trial in the absence of the defense team. Defendant contends that this ruling constituted "a structural error" and that reversal is mandated without any showing of prejudice.

The prosecution responds that the voluntary decision of counsel not to appear for the commencement of trial constituted ineffective assistance and that prejudice must be shown before any reversal is warranted. However, even if we assume that counsel's failure to appear does not come within the invited error doctrine, we find no basis to reverse the judgment.

■ We are not aware of any authority specifically addressing the precise issue before us. However, because the defense team elected not to appear for the commencement of the trial, defendant was not "deprived" of counsel in the constitutional sense, and thus, the issue for our resolution is not whether a structural error occurred. *See Bogdanov v. People,* 941 P.2d 247 (Colo.1997)(total deprivation of the right to counsel at trial is included within the category of structural error). Rather, in our view, the issue is whether the trial court was obligated to grant a continuance because of the defense team's strategic decision not to appear.

■ Ordinarily, the decision whether to grant a continuance is addressed to the discretion of the trial court. *See People v. Rodriguez,* 914 P.2d 230 (1996). And, the decision not to grant that continuance must be affirmed unless the defendant is able to demonstrate material prejudice. *See People v. Gardenhire,* 903 P.2d 1165 (Colo.App. 1995). The totality of the circumstances extant at the time of the request should be considered on appeal. *See People in Interest of D.J.P.,* 785 P.2d 129 (Colo.1990).

■ Here, as noted by the trial court, the case had been pending for more than two years and one continuance had already been granted the previous day for the defense team to confer with defendant about his decision not to appear for trial. The propriety of the advisement given defendant by the court concerning his appearance is not questioned. And, the record otherwise fails to demonstrate any prejudice.

Specifically, the court noted the absence of defendant and the defense team at the outset of the trial. The court instructed the jury on defendant's right not to appear for the trial and that the jurors must not allow his absence to prejudice them against defendant.

The court also instructed the jury that it must carefully weigh the evidence and convict defendant of the charges only if every element of each offense had been proven beyond a reasonable doubt. The court made no comment concerning the defense team's decision not to appear and thus demonstrated no criticism of counsel.

The opening statement by the prosecution did not exceed the bounds of propriety. Defense counsel was permitted to respond with an opening statement within an appropriate time frame.

Further, the first witness called by the prosecution was the victim's husband. While this witness provided a detailed description of the crime scene at the time he discovered the victim's body, he was not present when the crime was committed. As a result, his testimony does not directly address defendant's state of mind. Further, we perceive no basis for concluding that cross-examination of this witness was materially impacted by the absence of counsel during direct.

Under these circumstances, we find no reversible error in the court's ruling.

## II

Defendant next contends that his convictions should be reversed because the trial court erroneously denied his challenges for cause to six jurors. We disagree.

During voir dire, defendant challenged six jurors for cause on the grounds that they would automatically impose the death penalty if he were convicted of first degree murder. The trial court denied each of those challenges.

Each of the six jurors held a strong belief that the death penalty was appropriate for first degree murder and several did not believe that certain factors should mitigate against the imposition of the death penalty. However, the transcript reflects that five of the jurors indicated an ability and willingness to follow the instructions of the trial court. The only juror who did not affirmatively state his willingness to follow the instructions was not asked that question by counsel.

■ A trial court's denial of a challenge for cause will be upheld on appeal unless the record demonstrates an abuse of the court's discretion in ruling on the challenge. *People v. Montoya*, 942 P.2d 1287 (Colo.App.1996). Further, a prospective juror's expression of preconceived belief does not automatically require exclusion for cause. *People v. Russo*, 713 P.2d 356 (Colo.1986).

■ Here, the trial court found that the personal beliefs of the jurors would not keep them from being fair and impartial and following the law as instructed. We must accord this finding significant weight because such is based upon, among other things, the court's evaluation of the jurors' credibility and demeanor. *See People v. Sandoval*, 733 P.2d 319 (Colo.1987). It is apparent that the court was carefully evaluating each juror because challenges for cause were granted as to other prospective jurors for the reasons defendant presents here.

■ Accordingly, based on this record, we perceive no abuse of discretion by the trial court in denying the challenges for cause. *See People v. Orona*, 907 P.2d 659 (Colo.App. 1995).

## III

Defendant contends that the trial court committed reversible error by ordering him to undergo a competency evaluation and by allowing evidence from that evaluation to be admitted at trial. Additionally, defendant contends that the trial court improperly refused his discovery requests and improperly limited cross-examination regarding exculpatory material concerning the doctor that performed the evaluation. We conclude that the errors, if any, do not require reversal.

### A

Prior to trial, the defense team filed a motion with the court captioned "Motion to Preserve Constitutional Rights." In the motion, counsel expressed concern that defendant might not be competent to proceed with the trial. The motion requested rulings on a number of issues including the circumstances under which defendant might waive his privilege not to incriminate himself.

Because this motion raised doubts as to defendant's competency, the trial court ordered a competency examination on its own motion pursuant to §§ 16–8–110(2)(a) and 16–8–111(1), C.R.S. (1986 Repl.Vol. 8A).

■ Under these circumstance, we reject defendant's contention that the evaluation

was ordered erroneously absent a specific request by defense counsel. *See People v. Scherrer,* 670 P.2d 18 (Colo.App.1983) (trial court has duty to order evaluation whenever a doubt is entertained as to defendant's competency).

### B

After ordering the competency evaluation, the trial court instructed defendant that he did not have to say anything during the evaluation and that any statements he made could be used against him during the guilt phase of the trial. Defendant argues that this advisement was incorrect and incomplete, thereby making it impossible for him voluntarily or knowingly to waive his right to remain silent. Specifically, defendant notes that this advisement did not refer to any statements made by him that reflect his mental condition, as addressed in § 16–8–107, C.R.S. (1986 Repl.Vol. 8A), then in effect. We find no reversible error.

In *People v. Branch,* 805 P.2d 1075 (Colo. 1991), our supreme court considered the procedural safeguards necessary to protect a defendant when facing a court-ordered competency evaluation. As pertinent here, the court concluded that the trial court must advise a defendant that he has the right not to say anything to the psychiatrist during the evaluation and that any statements could be used against him in the guilt phase of the trial as rebuttal or impeachment evidence.

In footnote 3 of *Branch,* the court indicated that the trial court "should advise the defendant in similar fashion of the evidentiary consequences of statements made by him during the competency examination" relative to impeachment on the issue of mental capacity.

Thus, while the better practice would be to advise a defendant specifically that his right not to make any statements extends to statements regarding mental capacity, we find no basis for reversal here. An advisement that defendant need not make *any* statements to the psychiatrist necessarily includes statements reflective of his mental capacity.

### C

As noted, § 16–8–107(1) allows statements made during an evaluation to be used by the prosecution to rebut evidence of a defendant's mental condition. Defendant contends that the statute is unconstitutional because it forces a defendant to choose between his privilege against self-incrimination and his due process right to a competency determination. We disagree.

Defendant was entitled to remain silent during the court-ordered evaluation and then be examined by a psychiatrist of his own choice. Section 16–8–108(1), C.R.S. (1986 Repl.Vol. 8A). Any statements made to the privately retained psychiatrist would be privileged and could only be used by the prosecution to rebut evidence of defendant's mental culpability. *People v. Rosenthal,* 617 P.2d 551 (Colo.1980). Therefore, under the statutory scheme, defendant could obtain a competency evaluation and protect his privilege against self-incrimination unless and until he relied upon the lack of mental capacity to commit the charged crimes. Hence, there is no constitutional defect in the challenged statutes.

To the extent that defendant complains about the failure of the trial court to rule on his pre-examination motions relative to use of his statements, we are again persuaded that no reversible error occurred. Defendant was, as noted, advised that he need not make any statements.

### D

The trial court provided the following cautionary instruction for the testimony of the evaluating doctor:

[The doctor] has been called as a rebuttal witness to rebut evidence of the defendant's mental condition introduced by the defense *relating to his capacity to form the culpable mental state; that is, whether he acted intentionally, knowingly, or whether he acted with deliberation.*

In this case, *evidence of the defendant's statements* made to [the doctor] may be considered by the jury only as bearing upon the question of capacity to form the culpable mental state and not for the

substantive truth of the material contained in the defendant's *statements.*

(emphasis supplied)

Defendant contends that this instruction allowed the jury to consider the doctor's testimony for purposes beyond that allowed by § 16–8–107(1) which provides:

> [N]o evidence acquired directly or indirectly for the first time from a communication derived from the defendant's mental processes during the course of a court-ordered examination ... is admissible ... except to rebut evidence of his mental condition introduced by the defendant to show incapacity to form a culpable mental state; in such case, that evidence may be considered by the trier of fact only as bearing upon the question of capacity to form a culpable mental state.

Specifically, defendant argues that the instruction only restricted the use of defendant's *statements,* but that the statute pertains to the use of any evidence of a *communication* derived from a defendant's mental processes.

■■ Even if we assume that the statute permits the use of evidence other than statements, such as non-verbal communication, defendant has failed to point to any part of the doctor's testimony that the jury might have considered for an improper purpose. Therefore, absent a showing of prejudice, we conclude that limiting the instruction to "statements" constitutes harmless error. *See Askew v. Gerace,* 851 P.2d 199 (Colo.App. 1992).

### E

We also reject defendant's argument that the cautionary instruction improperly allowed the jury to use the doctor's testimony to rebut evidence that defendant did not act "after deliberation."

■■ We agree that the statute allows such testimony to be considered only as it relates to defendant's culpable mental state, and that "after deliberation" is not a part of the "culpable mental state." *See People v. Orona, supra.* However, defendant has also failed to show that any aspect of the doctor's testimony addressed the issue whether he acted with deliberation in committing the homicide. Therefore, absent a showing of prejudice, we conclude that the erroneous cautionary instruction constituted harmless error.

### F

Defendant filed a motion for disclosure of information believed to exist that would impeach the evaluating doctor's credentials and credibility. The prosecution provided documents to the court relating to his medical license in Minnesota and Colorado. Following an *in camera* review, the trial court concluded that there was no exculpatory evidence in the documents and denied defendant's motion.

After the doctor testified, defense counsel obtained a copy of a stipulation filed with the Minnesota Board of Medical Examiners. Defendant argues that this stipulation between the Board and the ·doctor contained a finding of improper and unprofessional conduct and should have been disclosed. However, even if we assume that the stipulation may be read as indicating the Board's view that the doctor was guilty of improper conduct, we find no reversible error.

■■ Specifically, the stipulation does not contain an admission of wrongdoing. Instead, the document states that the doctor denies that the allegations constitute "deviations from appropriate standards of medical practice ...." and that he "does not agree that his actions require Board action...." Accordingly, the trial court did not abuse its discretion by denying defendant's motion. *See* Crim.P. 16(I)(e).

Defendant also argues that the trial court improperly limited his cross-examination of the doctor regarding allegations of misconduct and lack of truthfulness. We disagree.

CRE 608(b) grants the trial court discretion in determining whether to allow cross-examination regarding the prior misconduct of a witness that is probative of truthfulness. *People v. Saldana,* 670 P.2d 14 (Colo.App. 1983).

Here, the trial court allowed defense counsel to question the doctor regarding a television report that he falsified psychiatric evaluations for military inductees, the existence of complaints filed against him in Minnesota, and whether he may have falsified an answer on his application for a license in Colorado.

Absent any conclusion on the merits of these allegations and others, we conclude that the trial court did not abuse its discretion by declining to permit further cross-examination.

## IV

Defendant offered expert testimony from two independent scientists that had performed testing on different strands of defendant's hair to determine whether evidence of cocaine was present. Both experts were of the opinion that the amounts of cocaine present in the tested samples were sufficient to indicate that defendant was a heavy user. Defendant contends that the trial court violated his state and constitutional rights to a fair trial by declining to permit the proffered testimony. We are not persuaded.

Admission of this evidence is governed by the so-called *Frye* test. *Fishback v. People*, 851 P.2d 884 (Colo.1993). The *Frye* test has two prongs: (1) the underlying theory or principle for the testing must have general acceptance in the relevant scientific community, and (2) there must be general acceptance in the relevant scientific community of the techniques used to conduct the testing. *Lindsey v. People*, 892 P.2d 281 (Colo.1995).

Here, even if we assume that the proffered evidence met the first prong on the test, the trial court found with record support that the second prong was not satisfied. Specifically, each expert confirmed that only one test had been conducted on the hair samples furnished. One of defendant's experts and the prosecution's expert both stated that a second test was preferable in each instance to verify the result.

Further, neither of defendant's experts were in a position to vouch for the accuracy of the other expert's test on a different sample. Hence, the trial court properly concluded that the technique used was not consistent with that generally accepted in the relevant scientific community.

## V

Defendant next contends that the trial court erred in declining to admit into evidence three exhibits representing information supplied by defendant at the time he was incarcerated in the local jail. All three documents contain information obtained in the jail from an inmate during initial booking and include medical history questions. The documents contained information supplied by defendant indicating his frequent use of illicit drugs, including information that he used drugs the day before his arrest.

Defendant contends that the information was admissible under both CRE 803(4)(statements for purposes of medical diagnosis or treatment) and CRE 803(6)(records of regularly conducted activity). We find no error in the trial court's ruling.

To the extent that defendant relies upon CRE 803(4), the record reflects that the information was not furnished in order to obtain diagnosis from a health care professional. Instead, the medical history was obtained as part of the jail's routine procedure for obtaining information on inmates.

We also conclude that the trial court did not abuse its discretion in declining to admit the documents pursuant to CRE 803(6). Among the other requirements for admission of the documents under this exception to the hearsay rule is that the "source of the information ... [does] not indicate lack of trustworthiness." *Schmutz v. Bolles*, 800 P.2d 1307, 1312 (Colo.1990). Here, the information was furnished by defendant and may be properly characterized as self-serving in the context of this case. Hence, the court properly excluded the documents on the basis of reliability.

## VI

Finally, defendant contends that the trial court erred in limiting defendant's defense of intoxication to the intent element of first

degree murder and that the jury should have been allowed to consider this defense relative to the deliberation element of the crime.

However, the trial court's ruling was consistent with the holding in *People v. Orona, supra,* and we decline to depart from the rule adopted there.

The judgment is affirmed.

ROTHENBERG and TAUBMAN, JJ., concur.