The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Harry T. ECKERT, Defendant–Appellant.**

**Nos. 94CA1600, 94CA1634.**

Colorado Court of Appeals, Div. II.

May 30, 1996.

Certiorari Pending Sept. 17, 1996 (96 SC 597).

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Roger G. Billotte, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Joan S. Heller, Denver, for Defendant–Appellant.

Opinion by Judge JONES.

Defendant, Harry T. Eckert, appeals the judgment entered on a jury verdict finding him guilty of first degree murder. We affirm.

On the evening of February 9, 1991, the victim was socializing in his home with friends. The defendant, who was living in a bedroom in the victim's house, was also there in his room. Later, after the victim's friends left, defendant was alone in the bedroom, and the victim remained alone in the living room.

Early the next morning, a neighbor was awakened by defendant who claimed that he had been lying in his bed sleeping when the victim entered his room and began beating and strangling him. The defendant told the neighbor that he acted in self-defense by stabbing the victim and that he believed the victim was dead. However, police investigation led to his prosecution and the conviction at issue here.

## I.

Defendant first contends that the trial court erred by denying his motion to dismiss the charges and failing to grant him immunity from prosecution under § 18–1–704.5, C.R.S. (1986 Repl.Vol. 8B). We disagree.

Section 18–1–704.5(2), commonly known as the "make-my-day" law, provides that:

[A]ny occupant of a dwelling is justified in using any degree of physical force, including deadly physical force, against another person when that other person has made an unlawful entry into the dwelling, and when the occupant has a reasonable belief that such other person has committed a crime in the dwelling in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry, and when the occupant reasonably believes that such other person might use any physical force, no matter how slight, against any occupant.

Anyone found to have acted under the provisions of this statute is immune from criminal prosecution and civil liability resulting from the use of any such force. Sections 18–1–704.5(3) and 18–1–704.5(4), C.R.S. (1986 Repl. Vol. 8B).

■ When § 18–1–704.5 is invoked by a defendant prior to trial as a bar to criminal prosecution, the burden is on the defendant to establish by a preponderance of the evidence that he or she acted within the confines of the statute and, therefore, is immune from criminal prosecution. *People v. Guenther,* 740 P.2d 971 (Colo.1987).

■ A requirement for immunity under § 18–1–704.5 is that the defendant show that the person against whom the force was used made an unlawful entry into the dwelling. In order to fulfill this requirement, the defendant must show that the intruder made an entry into the dwelling in knowing violation of the criminal law. *People v. McNeese,* 892 P.2d 304 (Colo.1995).

Defendant claims that, at his hearing to determine whether he was immune from criminal prosecution under § 18–1–704.5, the trial court improperly speculated about alternative scenarios to defendant's self-defense version which, through inference from other evidence presented, showed that defendant did not act to protect himself under the statute. The trial court determined that even though it was willing to accept the argument made by defendant that the victim's entry into his bedroom would have been unlawful if defendant's story were true, defendant had not established his entitlement to immunity under § 18–1–704.5 by a preponderance of the evidence.

The prosecution argues that the evidence submitted at the hearing showed that defendant's room was in some disarray and that a struggle may have occurred there but that the victim's body was found in an area between the kitchen and living room surrounded by a large pool of blood. In addition, the officers first on the scene testified that, while defendant told them that he had stabbed the victim after he woke up in his bed with the victim strangling him, they did not notice any large amounts of blood in defendant's bedroom. Furthermore, the officers testified

that defendant told them he had changed his clothes after he stabbed the victim.

We note initially that the trial in this matter occurred more than three years prior to issuance of *People v. McNeese, supra.* Thus, the trial court did not have the benefit of that case concerning these issues.

■ We conclude from the record that the trial court did not abuse its discretion in determining that defendant had not established by a preponderance of the evidence that he was entitled to immunity under § 18–1–704.5.

The trial court determined that there was not a preponderance of the evidence demonstrating that the struggle and mortal wounding occurred in the bedroom, rather than in the area between the kitchen and living room. The record reveals that it was in this area that the victim's body was found in a copious amount of blood. However, no blood trails from the bedroom were noted, and certainly there was not a large amount of blood on the bed where defendant claims the struggle occurred. Therefore, we conclude that the trial court did not err in denying defendant's motion to dismiss based upon his alleged immunity under § 18–1–704.5.

## II.

We also reject defendant's contention that the trial court committed reversible error in not instructing the jury, in accordance with § 18–1–704.5, that the jury need only determine whether the victim made an unlawful entry into a part of a dwelling that was occupied by defendant.

Having failed to establish immunity from prosecution under § 18–1–704.5(3), defendant then asserted the same grounds as an affirmative defense. *See People v. Malczewski,* 744 P.2d 62 (Colo.1987).

At the close of the evidence, however, the trial court refused to accept and present to the jury his tendered instruction concerning "defense of dwelling" that contained language referring to "that portion" and "the portion" of "the dwelling where the defendant resided...." Instead, the trial court, over the prosecution's objections, gave the jury written instructions as to the affirmative

defense substantially in the language of the "make-my-day" statute, including several references to "dwelling," and "unlawful entry into that dwelling." The court also gave an instruction defining "dwelling."

■ The record reflects that defense counsel did not make a timely objection setting forth specific grounds in support of his assertions that the trial court ought to have given his tendered instructions as to the affirmative defense. Accordingly, we review this contention of error on a plain error standard. *People v. Cowden,* 735 P.2d 199 (Colo.1987).

■ The People argue on appeal that no grounds of error were created that could prejudice the defendant because, in any event, the evidence did not support an instruction as to the affirmative defense. We conclude that reversible error did not occur, and that the instructions as to the affirmative defense were not supported by the evidence and could only have accrued to defendant's benefit.

The Supreme Court in *People v. McNeese, supra,* 892 P.2d at 309, held: "A prerequisite ... under the 'make-my-day' statute is an unlawful entry into the dwelling." Here, defendant failed to show that the bedroom was exclusively his province and that the victim's entry into the bedroom was unlawful. Hence, he did not demonstrate that the affirmative defense was applicable here, nor that he was entitled to an instruction under § 18–1–704.5. Therefore, any error concerning the giving of such instructions, which accrued to his benefit, was harmless.

## III.

Defendant next contends that the trial court erred in concluding that the physician-patient privilege applied in this case. We find no reversible error.

The record reflects that, in the 1970's, the victim here was diagnosed with a thirty percent military service-related disability of schizophrenia and that he was hospitalized for that mental illness and for impulsive character disorder. At trial, defendant proceeded on a theory that self-defense was necessitated, in part, by the fact that the

victim was a "very dangerous guy," and that he attacked the defendant because of his unstable mental condition.

Defendant subpoenaed the victim's medical records from the Veterans Administration hospital which had treated the victim. The court received the documents and, after ruling that the physician-patient privilege survives the death of a patient who holds the privilege, it then allowed counsel to review numerous documents that it determined were not privileged. Ultimately, the defense used five such documents in presenting its case, all of which were allowed into evidence as exhibits. The court declined to allow use of privileged documents at trial.

■  Based on our review of the record, we determine that, even assuming, *arguendo,* the trial court should have found no physician-patient privilege and allowed documents from the victim's medical record into evidence, defendant was able fully to present his defense of self-defense. Thus, under such circumstances, any error based on the trial court's rulings concerning physician-patient privilege is harmless.

The defense called a psychiatrist who had treated the victim for his mental illness and a doctor of internal medicine who had also treated him and had seen his behavior as influenced by his mental illness, alcohol, and general anger. The record reflects that the trial court allowed the psychiatrist to testify as to his treatment of the victim for schizophrenia, and allowed broad reference to a two-page exhibit from the Diagnostic and Statistical Manual of the American Psychiatric Association. The exhibit sets forth the psychotic symptoms in the active phase of those suffering schizophrenia. The psychiatrist was allowed to testify at length about the mood disorders, delusions, and other symptoms identified in the exhibit that had been displayed by the victim during his life, including during his treatment, that could have contributed to the events that led to his death.

Additionally, the trial court allowed detailed testimony from both doctors concerning other exhibits from the victim's medical records that highlight specific aspects of his mental illness, including his possession of knives, his threatening and abusive language and behavior, his ideation that he was going to kill someone, the fact that, on one occasion it required eight security personnel to restrain him, and the necessity for 72–hour holds for treatment purposes on several occasions during his bouts with symptomatic behavior concerning his mental illness.

The trial court placed almost no limits on defense counsel in presenting the evidence they wished in support of the affirmative defense. Indeed, a review of the record, including the closing argument, reveals that the defense was well-armed with matter from the victim's medical record to support its theory that the victim attacked defendant and that the death resulted from self-defense against a "very dangerous guy," acting out because of his unstable mental condition.

The confidence of the defense as to the case it was able to make for self-defense is revealed by its treatment of a prosecution photographic exhibit that graphically portrays the victim's body with a knife protruding from it, held by a coroner, to demonstrate the angle at which defendant's knife entered the victim's body. Despite the gruesome nature of the photograph, the defense vacated its objections to the exhibit, while the prosecution then protested that its own exhibit should not be admitted. This confidence by defense counsel in the evidence supporting its affirmative defense belies arguments here that defendant was in some manner prejudiced by the trial court's ruling as to the physician-patient privilege.

We conclude that defendant was not prejudiced and that any error in the court's ruling was harmless.

### IV.

Defendant next contends that the prosecutor's closing arguments constituted prosecutorial misconduct that violated his right to a fair trial. We disagree.

During the rebuttal closing argument, a prosecutor accused the defense of distorting evidence and continuing "to kick dirt on the grave of [the victim]." He also stated that justice is "not the justice that comes from

smearing the blood of [the victim] on the scales." Other comments were made that defendant argues constitute misconduct, including reference to the victim's military status during the Vietnam War.

■ As to some of the comments, defense counsel objected, and when the objections were sustained a curative instruction was given. However, contemporaneous objections were not offered as to certain of the prosecutor's comments. In such cases, the plain error standard applies, requiring that the comments be particularly egregious in order to frame a basis for reversal, *People v. Diefenderfer*, 784 P.2d 741 (Colo.1989), and further that, upon a review of the entire record, this court can determine with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Wilson v. People*, 743 P.2d 415 (Colo.1987).

■ It is improper for a prosecutor to misstate the evidence. *See People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (1978). Also, appeals to the emotionalism and to the patriotism of the jurors are improper. *See Harris v. People*, 888 P.2d 259 (Colo.1995). Nor should the passions and prejudices of the jurors be appealed to or inflamed. *See People v. Oliver*, 745 P.2d 222 (Colo.1987). Additionally, it is improper for a prosecutor to express personal beliefs as to a defendant's guilt, for such demonstrates "either a misplaced zeal to win ... or an ignorance of the elemental principles of trial protocol." *People v. Mason*, 643 P.2d 745, 752 (Colo.1982).

■ Here, the record reflects that, within the context of the entire rebuttal closing argument, the inappropriate characterizations of the prosecutor were not numerous, and were a small part of the summation. They certainly do not predominate over those parts of the argument that appropriately address the evidence and the prosecution theory of the case.

While the inappropriate remarks raise questions as to the skill and motives of the prosecutor, and, indeed, cause us to register our strong disapproval of them, we, nevertheless, cannot conclude that they so inflamed or impassioned the jury that it could not render a fair and impartial verdict.

## V.

Finally, defendant contends that the trial court abused its discretion in failing to hold a hearing on his motion for a new trial. Again, we disagree.

Defendant argues that since a motion for a new trial permits the trial court to correct any erroneous rulings at trial, it was an abuse of discretion for a judge who did not preside over the trial to deny defendant's motion for a new trial without a hearing. In addition, citing *People v. Scheidt*, 187 Colo. 20, 528 P.2d 232 (1974), defendant argues that his motion for a new trial should be treated as a Crim. P. 35(c) motion since he orally supplemented his motion for a new trial with a claim of ineffective assistance of counsel and that a hearing should have been granted.

However, the *Scheidt* case does not govern here. There, a written motion for a new trial was filed alleging newly discovered evidence. The trial court, during a timely hearing already granted on the motion, determined that the motion should, instead, be considered to be a Crim. P. 35(b) motion. The hearing then continued on that basis.

Here, after the motion for new trial was filed alleging general error as to jury instructions, various pre-trial motions, and the court's ruling concerning the physician-patient privilege, the trial court proceeded to sentencing, setting the motion for hearing later.

Thereafter, defense counsel were allowed to withdraw and a new attorney was appointed to represent defendant. Defendant stated orally that he wished to raise issues of ineffective assistance of counsel. However, throughout a series of continuances that ensued, from April 1992 to August 1994, caused in major part by defendant's systematic refusal to accept the attorneys appointed to represent him, no hearing could be had, and no written motion was ever filed setting forth ineffective assistance of counsel issues.

Further, at one point, in September 1993, the trial court ordered defendant to file any motions he desired in writing within 30 days. None were filed. Thus, while the trial court tried to accommodate defendant, he did not file any motion setting forth facts in support of his oral allegations based on which the sufficiency of his claims could be measured.

By August 23, 1994, a new judge had taken over the file. Finding no additional motions and having granted one last motion for defense counsel to withdraw, the trial court denied the motion for new trial that had been filed April 7, 1992, two-and-one-half-years before. It should be noted that the record for this 2 1/2 year period is incomplete, making review difficult.

■ Under Crim. P. 33(b), a defendant may move for a new trial by filing a motion in writing that states with particularity the defects and errors complained of. *People v. Hernandez,* 695 P.2d 308 (Colo.App.1984). However, Crim. P. 33 does not require a trial court to grant a hearing on a motion for a new trial. The trial court may grant a new trial if it determines that the interests of justice so require.

■ We conclude, based on the incomplete record before us, that the trial court did not abuse its discretion in denying defendant's motion without a hearing.

Several hearings were set that had to be continued because of defendant's hostility and his unwillingness to cooperate with counsel. Over a 2 1/2 year period, there was no filing of a supplementary written motion that could be considered a Crim. P. 35 motion that might justify a hearing. In light of the fact that, during that time, the court stood ready to consider defendant's motion concerning ineffective assistance of counsel, and that defendant did not file such motion, we conclude that defendant has waived any Crim. P. 35 motion based on ineffective assistance of counsel.

In light of the above circumstances, the trial court's action in denying the motion for a new trial without a hearing was not manifestly arbitrary, unreasonable, or unfair. *See People v. Milton,* 732 P.2d 1199 (Colo.1987).

The judgment is affirmed.

CRISWELL and HUME, JJ., concur.