The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Thomas P. **MERCHANT**, Defendant–Appellant.

No. 97CA0599.

Colorado Court of Appeals, Div. II.

Jan. 7, 1999.

Certiorari Denied Aug. 9, 1999.*

† Justice SCOTT does not participate.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John J. Krause, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

David F. Vela, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by Judge CASEBOLT.

Defendant, Thomas P. Merchant, appeals the judgment of conviction and the sentence entered upon verdicts finding him guilty of theft and four habitual criminal counts. We affirm in part, vacate in part, and remand for further proceedings.

Defendant offered to sell the victim's car for her. After she gave him the title to the vehicle, he sold it, but failed to pay her the proceeds.

The habitual criminal counts against defendant were based on felony convictions sustained in the following four cases: (1) case number 83CR68, in which judgment had entered on October 17, 1986; (2) case number 85CR789, in which judgment had entered on October 22, 1986; (3) case number 88CR572, in which judgment had entered on February 5, 1990; and (4) case number 88CR1053, in which judgment had entered on January 18, 1990.

Defendant had timely initiated a collateral attack upon his 85CR789 conviction in case number 88CR1053 when the prosecution had sought to use that conviction for habitual criminal purposes. However, there was not a complete adjudication of that collateral attack. Rather, the trial court in 88CR1053

determined in an initial hearing only that defendant had made a *prima facie* showing that the 85CR789 conviction was invalid. The court had then continued that hearing to allow the prosecution to prepare and present its response. *See Watkins v. People,* 655 P.2d 834 (Colo.1982) (once a defendant makes a *prima facie* showing of the invalidity of a conviction, the burden shifts to the prosecution to demonstrate its validity). But, before the date scheduled for the continued hearing, defendant entered into a plea agreement in 88CR1053 in which he pleaded guilty to possession of a controlled substance and the habitual criminal charges were dismissed.

In this proceeding, defendant filed a motion attacking all four convictions. However, the trial court dismissed that motion, determining that it was time-barred and that defendant had failed to show justifiable excuse or excusable neglect. This appeal followed defendant's conviction.

## I.

Concerning the habitual criminal counts, defendant contends the trial court erred in concluding that his collateral attack upon the four prior convictions was time-barred pursuant to § 16–5–402, C.R.S.1998, and that he had failed to demonstrate justifiable excuse or excusable neglect. We conclude that further findings are necessary.

Section 16–5–402, C.R.S.1998, provides that, in all cases involving felony offenses other than class one felonies, a defendant has three years in which to attack collaterally the validity of the conviction. An untimely collateral attack may be considered, however, if a defendant demonstrates that the failure to seek timely relief was the result of circumstances amounting to justifiable excuse or excusable neglect. Section 16–5–402(2)(d), C.R.S.1998; *People v. Abeyta,* 923 P.2d 318 (Colo.App.1996).

Here, defendant filed a motion to prevent the use of his previous four convictions for habitual criminal purposes on May 24, 1996. Because it was filed more than three years following the entry of final, unappealed judgments of conviction in all of the previous cases, absent tolling of the time bar of § 16–

5–402, C.R.S.1998, or the existence of justifiable excuse or excusable neglect, defendant's collateral attack was untimely. *See* § 16–5–402(2)(a), C.R.S.1998. However, defendant asserts that, because § 16–5–402 requires only that a collateral attack be "commenced within the applicable time period," his timely initiation of a collateral attack upon the 85CR789 conviction in the 88CR1053 proceeding tolled the limitations period of § 16–5–402 so that he is not prevented from collaterally attacking that conviction here. We disagree.

The interpretation of a statute presents a question of law that we review *de novo.* Our primary task in construing a statute is to give effect to the intent of the General Assembly by looking first at the language of the statute. *See People v. Terry,* 791 P.2d 374 (Colo.1990).

Statutes should be construed to effectuate the beneficial purpose of the legislative measure. *See People v. Bergen,* 883 P.2d 532 (Colo.App.1994). We must avoid constructions that would defeat an obvious purpose of a statute. *People v. Montoya,* 942 P.2d 1287 (Colo.App.1996).

The purpose of the limitations period in § 16–5–402 is to alleviate the difficulties attending litigation of stale claims and the potential for frustrating various statutory provisions directed at repeat offenders, former offenders, and habitual offenders. *See People v. Wiedemer,* 852 P.2d 424 (Colo.1993).

Defendant's construction of § 16–5–402 defeats that purpose. Under his interpretation, a timely attack, not completely adjudicated, would forever toll the limitations period and allow future attacks upon that same conviction regardless of when such later attacks were filed. The difficulties attending litigation of stale claims would not be lessened if defendants were permitted to revive and litigate collateral attacks after memories have faded, and evidence and witnesses are no longer available.

Likewise, under defendant's interpretation, so long as there was a timely commencement of a collateral attack, a defendant could revive that collateral attack in any later proceeding in which the prosecution attempted

to use that conviction, but then dismiss the attack and preserve the "threat" of invalidity forever. Accordingly, principles of finality would be defeated. This would frustrate the statutory provisions directed at bringing closure to post-conviction claims.

As to his argument that the limitations period is tolled, defendant does not cite, nor does our research reveal, any Colorado appellate decisions wherein tolling is considered in the context of the limitation period contained in § 16–5–402. Because civil statutes of limitation are similar in purpose and operation, we therefore look to cases analyzing tolling in that context for guidance. *Compare Jones v. Cox,* 828 P.2d 218 (Colo.1992) (purpose of civil statutes of limitation is to promote justice, discourage unnecessary delay, and forestall prosecution of stale claims) *with People v. Wiedemer, supra* (purpose of limitations period is to alleviate the difficulties attending litigation of stale claims).

In *King v. W.R. Hall Transportation & Storage Co.,* 641 P.2d 916 (Colo.1982), the supreme court considered whether the pendency of mechanics' lien actions filed against defendants who were later dropped because of misjoinder tolled the six-month statute of limitations for bringing mechanics' lien claims. The court stated the general rule that, when a statute does not specifically allow for tolling during the pendency of a prior action, a party cannot deduct from the limitations period the time consumed by the pendency of an action in which he or she sought to have the matter adjudicated, but which was dismissed without prejudice as to him or her. *See also Commercial Equity Corp. v. Majestic Savings & Loan Ass'n,* 620 P.2d 56 (Colo.App.1980); *B.C. Investment Co. v. Throm,* 650 P.2d 1333 (Colo.App.1982).

■ Applying that analysis here, we conclude that defendant's timely commencement of a collateral attack upon his 85CR789 conviction in 88CR1053 did not toll the limitations period set forth in § 16–5–402.

First, § 16–5–402 contains no specific provisions allowing the three-year period to be tolled. Second, because defendant could have finalized his collateral attack upon 85CR789 in 88CR1053 or initiated a collateral attack through a Crim. P. 35(c) motion for post-conviction relief, the result was equivalent to a dismissal without prejudice.

■ Accordingly, unless defendant demonstrates that the failure to seek relief within the applicable period was the result of circumstances amounting to justifiable excuse or excusable neglect, his collateral attack upon the 85CR789 conviction in this proceeding is time-barred pursuant to § 16–5–402. *See People v. Abeyta, supra.*

Defendant asserts, as he did at trial, five grounds supporting his argument that he had demonstrated justifiable excuse or excusable neglect to excuse the untimely collateral attack upon all four convictions. Specifically, he asserts that: (1) his previous counsel was ineffective in failing to complete the collateral attack upon his 85CR789 conviction; (2) he has a learning disability; (3) his previous counsel represented to him that he would "take care of his prior convictions" but failed to do so even after defendant paid him for that service; (4) he had no funds to hire counsel while he was incarcerated; and (5) he was addicted to cocaine.

■ Whether the facts and circumstances qualify for the justifiable excuse or excusable neglect exception to the time bar is a question of fact ordinarily to be resolved by the trial court. *See People v. Wiedemer, supra.*

■ The relevant factors a trial court should consider in making that determination include: (1) the existence of any impediments preventing a challenge to a prior conviction; (2) whether the defendant had a previous need to make a challenge; (3) whether the defendant knew that a prior conviction was constitutionally infirm or had reason to question its validity; (4) whether there existed other means to prevent use of the convictions; and (5) the effect that the passage of time has had on the government's ability to defend against the challenge. *See People v. Wiedemer, supra.*

Here, the trial court concluded that none of the grounds asserted by defendant established justifiable excuse or excusable neglect to excuse his untimely collateral attack pursuant to § 16–5–402(2)(d).

■ Concerning defendant's contention that his lack of funds while incarcerated qualifies as justifiable excuse or excusable neglect, such claim is meritless as a matter of law. *See People v. Mershon,* 874 P.2d 1025 (Colo.1994); *People v. Rowe,* 837 P.2d 260 (Colo.App.1992), *rev'd on other grounds,* 856 P.2d 486 (Colo.1993) (lack of funds does not qualify as justifiable excuse or excusable neglect). Hence, we affirm the determination as to that contention.

■ However, as to the balance of defendant's contentions, we are unable to review the trial court's determination because it did not make any findings of fact in accordance with the factors set forth in *People v. Wiedemer.* Accordingly, we must remand for further consideration in light of the *Wiedemer* factors. We express no opinion concerning the legal sufficiency of his remaining contentions in the absence of a factual record and findings by the trial court.

## II.

■ Defendant contends the trial court erred in admitting certain testimony regarding the health of the victim's husband. We disagree.

Defendant sought to exclude evidence that the victim's husband was dying of a brain tumor at the time of the theft. Defendant argued the evidence was not relevant to the theft charge and that it was unduly prejudicial.

At a hearing on the motion, the prosecution asserted the evidence was relevant to show defendant's intent permanently to deprive the victim of her money. The prosecution contended that, because defendant knew how desperately she needed the money, his failure to give her the money "right away" indicates his intent never to give it to her. The trial court found the evidence relevant and denied defendant's motion.

Under CRE 401, evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Further, CRE 403 strongly favors the admission of relevant evidence, and the balance should generally be struck in favor of admission when evidence indicates a close relationship to the event charged. *See People v. Gibbens,* 905 P.2d 604 (Colo.1995).

Whether defendant intended permanently to deprive the victim of her money was a central issue in the case. The challenged evidence was offered to assist the jurors in determining whether that was defendant's intent or whether, as he contended, he misunderstood the victim's circumstances. Hence, the evidence was relevant.

■ In ascertaining whether the trial court abused its discretion in admitting this evidence, we must assume the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice reasonably to be expected. *See People v. Gibbens, supra.* Upon so doing, we cannot say that the trial court's ruling was manifestly arbitrary, unreasonable, or unfair. Accordingly, the trial court did not abuse its discretion in admitting such evidence. *See People v. Eggert,* 923 P.2d 230 (Colo.App.1995).

## III.

Defendant next asserts that he was deprived of a fair trial because of five instances of prosecutorial misconduct. We are not persuaded.

■ In determining whether prosecutorial misconduct mandates a new trial, an appellate court must evaluate the severity and frequency of misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to defendant's conviction. Reversible error exists only if there are grounds to believe that the jury was substantially prejudiced by improper conduct. *People v. Orona,* 907 P.2d 659 (Colo.App.1995).

Here, defendant made timely objections as to two instances of asserted prosecutorial misconduct. First, after the trial court overruled his objection to the prosecutor's rhetorical question "would an innocent person do what [defendant] did to [the victim]" the prosecutor asked the question again with an

added reference to defendant's knowledge that the victim's husband was in the hospital critically ill. Defendant asserts only the added reference as prosecutorial misconduct here.

Second, defendant asserts as improper a statement made by the prosecutor during closing argument that: "I think the evidence is clear that [defendant] is guilty, and I'd ask you to return ... with that verdict." Defendant objected, and the prosecutor responded, "I would submit the evidence is clear."

■ Neither remark constituted improper conduct. The prosecutor's reference to defendant's knowledge that the victim's husband was in the hospital critically ill was proper because it involved facts and inferences therefrom which had been proved at trial. *See People v. Hernandez*, 829 P.2d 394 (Colo.App.1991).

■ The second statement by the prosecutor quoted above was a proper comment on the evidence and reasonable inferences to be drawn therefrom, *see People v. Moya*, 899 P.2d 212 (Colo.App.1994), and was not a prohibited statement of personal belief.

Accordingly, we find no error in the prosecution's conduct in those two instances. *See People v. Orona, supra.*

Because defendant failed to object to the remaining three instances, our review concerning them is for plain error. *See People v. Eckert*, 919 P.2d 962 (Colo.App.1996).

■ Prosecutorial misconduct amounts to plain error only when this court can determine with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *See People v. Eckert, supra.*

■ Here, the first alleged impropriety occurred when, during his opening statement, the prosecutor stated that the victim's husband was critically ill in the hospital with a brain tumor at the time of the theft. Since that remark was based on evidence previously ruled admissible by the trial court, and was consistent with the victim's testimony during the trial, we do not consider it as

being improper. *See People v. Melanson*, 937 P.2d 826 (Colo.App.1996).

■ The prosecutor's second challenged remark, that the "[defendant's] guilty of the crime of theft," merely expressed the proposition that the evidence was sufficient to sustain a conviction. Hence, it was not improper.

■ The final challenged remark, that "[t]hat's not the way he does it," when read in full context, was a proper comment on the evidence to be adduced at trial and was not an implication that defendant had committed previous crimes. *See People v. Eckert, supra.*

Accordingly, we find no error, plain or otherwise. *See People v. Eckert, supra.* And, because we find no error, we reject defendant's contention that the cumulative effect of the prosecutorial misconduct resulted in a denial of his right to a fair trial.

IV.

■ Defendant next contends the trial court erred in failing to disqualify the Weld County District Attorney's office. We disagree.

■ Section 20–1–107, C.R.S.1998, gives the trial court discretion to disqualify the district attorney from a case and appoint a special prosecutor if the district attorney is "interested" in the outcome of the case. *People ex rel. Sandstrom v. District Court*, 884 P.2d 707 (Colo.1994).

Although the statute does not define the word "interested," the supreme court has held that disqualification is proper when the district attorney has some involvement in the defendant's case that would impair that official's ability to prosecute the case fairly. *See People ex rel. Sandstrom v. District Court, supra.*

■ Another ground for disqualification is the appearance of impropriety. Disqualification based on the appearance of impropriety does not involve an actual impropriety such as violation of a rule of professional conduct or other behavior that may bring into question the actual fairness

of a trial. *People v. County Court*, 854 P.2d 1341 (Colo.App.1992).

■ Whether a district attorney and his or her staff should be disqualified is a matter largely within the discretion of the district court. *People v. Garcia*, 698 P.2d 801 (Colo. 1985).

Here, at the hearing on defendant's motion to recuse, defendant asserted that the following facts created an appearance of impropriety necessitating the disqualification: (1) defendant's wife and the District Attorney's wife were cousins; (2) the District Attorney had represented defendant's mother 25 years previously in a dissolution of marriage proceeding and 20 years previously in a dependency and neglect proceeding involving defendant's sister; and (3) the District Attorney had had conversations with his wife's father regarding defendant.

The District Attorney testified that he did not remember meeting defendant's wife, although she was pointed out to him once in a restaurant. He also testified that, while it was possible he had represented defendant's mother while in private practice, he did not remember her or his past representation of her. He further testified that, although he had had conversations with his wife's father several years previously about the father lending defendant money for bail and the circumstances surrounding that incarceration, he did not know the outcome of the situation.

Given these circumstances, we find no abuse of discretion by the trial court in refusing to disqualify the District Attorney's office. We perceive no actual conflict of interest, nor any appearance of impropriety. *See People ex rel. Sandstrom v. District Court, supra.*

## V.

■ In the event the trial court determines on remand that defendant has failed to demonstrate justifiable excuse or excusable neglect for failing timely to challenge his previous convictions, defendant's final contention that the trial court erred in failing to conduct an extended proportionality review of his sentence, and erred in finding his

sentence constitutionally proportionate, will remain. Hence, because it may arise on remand, and in order to serve judicial economy, we address and reject that claim.

■ The Eighth Amendment prohibits the imposition of cruel and unusual punishments. This provision prohibits not only barbaric punishments, but also the imposition of sentences that are disproportionate to the severity of the crimes committed. *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

■ However, the Eighth Amendment does not require strict proportionality between the crime and the sentence. *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). Instead, it forbids only extreme sentences that are grossly disproportionate to the crime. *People v. Smith*, 848 P.2d 365, 374 (Colo.1993).

■ Outside the capital punishment context, successful challenges to the proportionality of a particular sentence are extremely rare. *See Harmelin v. Michigan, supra*. However, no sentence is *per se* constitutional, *see Solem v. Helm, supra*, and thus we disagree with the People's contention that proportionality review is unwarranted when a defendant has received less than a life sentence. For similar reasons, we reject the People's contention that the revised habitual criminal statute already incorporates proportionality considerations because the sentence imposed is not life imprisonment, but four times the maximum of the presumptive range sentence for the predicate felony.

■ A proportionality review requires a comparison of the nature and number of offenses committed with the severity of the punishment imposed upon the defendant. *See People v. Mershon, supra*. When the crimes supporting a habitual criminal sentence include grave or serious offenses and a defendant will become eligible for parole, only an "abbreviated" review is required. *See People v. Anaya*, 894 P.2d 28 (Colo.App. 1994).

■ An abbreviated review consists of a scrutiny of the offenses in question to deter-

mine whether, in combination, they are so lacking in gravity or seriousness as to suggest that a sentence is constitutionally disproportionate to the crime. See *People v. Anaya, supra.*

Here, defendant was sentenced to twenty-four years in prison under the habitual criminal statute, but can be eligible for parole after approximately twelve years. His triggering crime of theft constitutes a serious crime for proportionality purposes. See *People v. Mershon, supra.*

■■■ Moreover, even if we assume, as defendant argues, that attempted theft is not a serious crime for proportionality purposes, his other crimes of felony theft and felony possession of a controlled substance are serious crimes. See *People v. Mershon, supra*; *People v. Cisneros*, 855 P.2d 822 (Colo.1993) (possession and sale of narcotic drugs are grave and serious offenses). Additionally, the trial court found, and we agree, that the gravity and seriousness of defendant's crimes were enhanced by defendant's repeated abuse of the trust of his victims. Therefore, we conclude that the offenses in combination are grave and serious, and an abbreviated review is all that is required. See *People v. Anaya, suprai.*

In view of the gravity of defendant's offenses, the twenty-four-year sentence imposed by the trial court under the habitual criminal statute is not grossly disproportionate to his crimes. See *People v. Anaya, supra.* Accordingly, we find no error in the trial court's determination.

That part of the judgment premised on the determination that defendant had failed to establish justifiable excuse or excusable neglect for his untimely collateral attack upon his four prior convictions is vacated, and the cause is remanded with instructions to make specific findings of fact in accordance with the factors set forth in *People v. Wiedemer, supra.* If the trial court finds justifiable excuse or excusable neglect, it shall proceed to hear the merits of the attack and enter rulings relative to the habitual criminal adjudication consistent therewith. If it finds no justifiable excuse or excusable neglect, the habitual criminal adjudication and sentence imposed shall stand affirmed, subject to de-

fendant's right to appeal that determination. The judgment of conviction for theft is affirmed.

Judge CRISWELL and Judge VOGT concur.