**Christopher Sheldon
CRESPIN, Petitioner,**

v.

**The PEOPLE of the State of
Colorado, Respondent.**

**No. 84SC157.**

Supreme Court of Colorado,
En Banc.

June 23, 1986.

Rehearing Denied July 14, 1986.

David F. Vela, Public Defender, Thomas Van Cleave, III, Deputy Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Virginia Byrnes Horton, Asst. Atty. Gen., Denver, for respondent.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *People v. Crespin*, 682 P.2d 58 (Colo.App.1984), which affirmed the district court's denial of the Crim. P. 35(c) motion of the defendant, Christopher Sheldon Crespin. The defendant challenged his conviction for murder in the first degree on the basis that one of the several alternative types of first degree murder submitted to the jury under a general verdict was that form of extreme indifference murder found to be constitutionally infirm in *People v. Marcy*, 628 P.2d 69 (Colo.1981). In affirming the district court's denial of the defendant's Crim. P. 35(c) motion, the court of appeals concluded that the submission to the jury of the extreme indifference murder charge was a constitutional error but that the error was harmless beyond a reasonable doubt. *Crespin*, 682 P.2d at 60. We reverse the judgment of the court of appeals, and we remand the case for either a new trial or resentencing.

## I.

The defendant was charged by information in which it was alleged in a single count[1] that the defendant committed three types of first degree murder, namely, murder after deliberation,[2] felony murder,[3] and extreme indifference murder.[4] The charge arose out of the strangulation death of a thirty year old female victim during the

early morning hours of November 2, 1978, in Jefferson County, Colorado.

The prosecution's evidence, while largely circumstantial, established the following events surrounding the death of the victim. On November 1, 1978, the defendant met the victim at a discotheque in the city of Aurora. Later in the evening the defendant accompanied the victim to her home in the victim's automobile. The defendant was there introduced to the victim's baby-sitter and the victim's nine year old daughter. The victim put her child to bed and then drove the baby-sitter home. At approximately 5:00 a.m. on November 2, the victim's daughter awoke and observed the defendant backing rapidly out of the driveway in the victim's car. Almost immediately thereafter she discovered her mother lying unconscious in the family room with her pants pulled down slightly over her hips and her shirt pulled up over her breasts. The daughter telephoned the police for assistance, but resuscitation efforts were unsuccessful and the victim was pronounced dead at the scene. It was determined by autopsy that the cause of death was strangulation which lasted approximately two or three minutes and which occurred one to three hours before the victim's body was discovered. The autopsy also established that the victim had not engaged in sexual intercourse during the period immediately prior to her death.

The police quickly determined the identity and address of the defendant and discovered the victim's car approximately one block from his residence. The defendant was arrested at his home at approximately 7:00 a.m. on November 2, 1978. A consent search of the defendant's home resulted in

---

1. The defendant was also charged with and convicted of a second count alleging the commission of a crime of violence by causing the death of the victim during the commission or attempted commission of the crime of murder, robbery, or sexual assault. § 16–11–309, 8 C.R.S. (1978). Since the defendant's conviction on this count was based on the guilty verdict to murder in the first degree, the defendant's conviction on that count must be vacated only if the prosecution elects to retry the defendant for the crime of murder in the first degree. If the prosecu-

tion on remand elects to petition the court for an entry of a judgment of conviction and sentence on the crime of murder in the second degree, the guilty verdict on the violent crime charge will stand.

2. Section 18–3–102(1)(a), 8 C.R.S. (1978).

3. Section 18–3–102(1)(b), 8 C.R.S. (1978).

4. Section 18–3–102(1)(d), 8 C.R.S. (1978).

the recovery of the victim's purse underneath a piece of clothing below the basement stairwell. The defendant testified at trial and denied strangling the victim. He admitted that he had accompanied the victim to her home, but stated that he left the home at approximately 3:30 or 4:00 a.m.

The trial court, over the defendant's objection, instructed the jury on the following alternative methods of committing murder in the first degree: murder after deliberation; felony murder during the commission or attempted commission of robbery, sexual assault in the first degree, and sexual assault in the second degree; and extreme indifference murder. The trial court submitted the case to the jury under a general verdict form for first degree murder rather than a special verdict form setting forth the various types of first degree murder. The jury returned a guilty verdict of murder in the first degree, and the trial court thereafter sentenced the defendant to life imprisonment. The defendant appealed his conviction to the court of appeals, challenging various evidentiary rulings made by the trial court during the course of the trial, but his conviction was affirmed on February 19, 1981. *People v. Crespin*, 631 P.2d 1144 (Colo.App.1981).

On March 9, 1981, this court held in *People v. Marcy*, 628 P.2d 69 (Colo.1981),

that the statutory crime of "knowingly" committing extreme indifference murder as defined in section 18-3-102(1)(d), 8 C.R.S. (1978), violated equal protection of the laws under the Colorado Constitution because that offense was indistinguishable from the crime of "knowingly" committing second degree murder as defined in section 18-3-103(1)(a), 8 C.R.S. (1978). After our decision in *Marcy*, the defendant filed a Crim. P. 35(c) motion in which he claimed that the submission of the constitutionally infirm offense of extreme indifference murder to the jury under a general verdict violated due process of law under the Colorado Constitution.[5] The district court denied the defendant's motion for post-conviction relief, and the court of appeals affirmed the judgment of the district court.[6] In affirming the judgment, the court of appeals concluded that the evidence presented at the defendant's trial in 1979 was sufficient to support a conviction for felony murder and that the submission of the extreme indifference murder charge to the jury under a general verdict was harmless constitutional error. We conclude that the submission of the constitutionally infirm crime of extreme indifference murder under a general verdict was constitutional error, that the error was not harmless beyond a reason-

---

**5.** The defendant's Crim. P. 35(c) motion raised a cognizable claim. Crim. P. 35(c)(2)(II) states:

Notwithstanding the fact that no review of a conviction of a crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make application for post-conviction review upon the grounds hereinafter set forth. Such an application for post-conviction review must, in good faith, allege one or more of the following grounds to justify a hearing thereof:

That the applicant was convicted under a statute that is in violation of the Constitution of the United States or the constitution of this state, or that the conduct for which the applicant was prosecuted is constitutionally protected.

**6.** At the Crim. P. 35(c) hearing, the prosecution called two of the jurors who testified that the jury did not consider extreme indifference murder in reaching its verdict. The court of appeals

concluded that the district court's consideration of such evidence was expressly prohibited by CRE 606(b), which states in pertinent part as follows:

Upon an inquiry into the validity of a verdict ..., a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict ... or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jurors' attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

We agree that CRE 606(b) prohibited the district court from considering the jurors' testimony at the Crim. P. 35(c) hearing.

able doubt, and that either a new trial or resentencing on the lesser offense of second degree murder is an appropriate remedy for redressing the error in this case.

## II.

In *Marcy*, 628 P.2d 69, we held that the crime of extreme indifference murder as defined in section 18–3–102(1)(d), 8 C.R.S. (1978), violated equal protection of the laws under the Colorado Constitution[7] because that crime was not sufficiently distinguishable from second degree murder to warrant the substantial differential in penalty authorized by the statutory scheme. We stated in *Marcy*:

> By virtue of the 1977 amendment to the Colorado Criminal Code "knowingly" was substituted for "intentionally" in section 18–3–102(1)(d). Colo. Sess. Laws 1977, ch. 224, 18–3–102(1)(d) at 960. The elements of extreme indifference murder, as applicable to this case, are therefore: (1) under circumstances manifesting extreme indifference to the value of human life; (2) knowingly engaging in conduct that creates a grave risk of death to another; and (3) thereby causing the death of another. Second degree murder was likewise reduced to a general intent crime by deleting "intentionally" and substituting "knowingly". Colo. Sess. Laws 1977, ch. 224, 18–3–103(1)(a) at 960. As provided in section 18–3–103(1)(a), second degree murder consists of causing the death of a person knowingly. Section 18–1–501(6), C.R.S. 1973 (1978 Repl. Vol. 8), defines knowingly or willfully as follows:
>
> "A person acts 'knowingly' or 'willfully' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such a nature or that such circumstance exists. A person acts 'knowingly' or 'willfully', with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause that result."

Upon close scrutiny of the culpability elements of each offense, both of which mandate that the death-causing act be done "knowingly", we are unable to find any rational basis of distinction between first degree murder by extreme indifference under section 18–3–102(1)(d) and second degree murder under section 18–3–103(1)(a). Moreover, the added component of section 18–3–102(1)(d)—"under circumstances manifesting extreme indifference to the value of human life"— adds nothing to the proscribed conduct that renders it reasonably distinguishable from the statutory definition of murder in the second degree.

628 P.2d at 77–78; *accord People v. Lee*, 630 P.2d 583 (Colo. 1981), *cert. denied sub nom. Colorado v. Lee*, 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982); *People v. Gurule*, 628 P.2d 99 (Colo. 1981); *People v. Curtis*, 627 P.2d 734 (Colo. 1981). In the present case, the jury returned a general guilty verdict to the crime of murder in the first degree under instructions which included that same form of extreme indifference murder found constitutionally infirm in *Marcy*. There can be no question that the error in submitting a constitutionally invalid crime to the jury was an error of constitutional magnitude in violation of due process of law, Colo. Const. art. II, § 25, as the court of appeals recognized.

There remains the question of harmless error. We recognize that a constitutional error may be deemed harmless as long as a reviewing court is satisfied beyond a reasonable doubt that the error did not contribute to the verdict. *E.g., Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *see also Germany v. People*, 198 Colo. 337, 599 P.2d 904 (1979). When, as here, however, a case is submitted to the jury under a general verdict on alternative theories of criminal liability, one of which is unconstitutional, and a general guilty verdict is returned, it is virtually impossible for a reviewing court to determine with any de-

---

7. As *Marcy* recognized, the right to equal protection of the laws is included within due process of law under article II, section 25 of the Colorado Constitution.

gree of certainty the precise legal theory on which the verdict was based, with the result that the constitutional error in submitting the case to the jury in that form cannot be deemed harmless and the conviction must be set aside. *Leary v. United States,* 395 U.S. 6, 31–32, 89 S.Ct. 1532, 1545–1546, 23 L.Ed.2d 57 (1969); *Stromberg v. California,* 283 U.S. 359, 367–68, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931); *Lee,* 630 P.2d at 587–88; *see also Francis v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, 1976 n. 8, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 526, 99 S.Ct. 2450, 2460, 61 L.Ed.2d 39 (1979). The court of appeals, therefore, erred in concluding that the constitutional error committed during the defendant's trial was harmless.[8]

### III.

■ Although the error in this case is not harmless, it does not necessarily follow that a new trial is the only form of relief appropriate to redress the error. We have held on several occasions that when all the elements of a lesser offense have been established by competent evidence and have been included in the jury's guilty verdict to the more serious but constitutionally infirm crime, it is appropriate to vacate the conviction and remand the case with directions to enter a judgment of conviction on the lesser offense and to resentence the defendant for that crime. *E.g. Curtis,* 627 P.2d 734; *Till v. People,* 196 Colo. 126, 581 P.2d 299 (1978); *People v. Dominguez,* 193 Colo. 468, 568 P.2d 54 (1977); *People v.*

*Horrocks,* 190 Colo. 501, 549 P.2d 400 (1976); *People v. Webb,* 189 Colo. 400, 542 P.2d 77 (1975); *People v. Bowers,* 187 Colo. 233, 530 P.2d 1282 (1974). Under the state of the record before us, we are satisfied that there was abundant evidence establishing all the essential elements of the lesser offense of second degree murder, which consists of causing the death of another "knowingly." § 18–3–103(1)(a), 8 C.R.S. (1978).

It was undisputed that the defendant left the discotheque with the victim and returned with her to her home in the early hours of the morning on November 2, 1978. The defendant was observed leaving the victim's home only moments before her body was discovered by her nine year old daughter. Expert testimony established that the victim had been strangled for approximately two to three minutes during the time that the defendant would have been at her home and that strangulation was the cause of the victim's death. Regardless of the relative strength of the prosecution's case on the various types of first degree murder submitted to the jury, there was abundant and competent evidence establishing beyond a reasonable doubt all the essential elements of second degree murder—namely, that it was the defendant who "knowingly" strangled the victim, that the defendant was aware that such conduct was practically certain to cause the victim's death, and that such conduct did cause the victim's death.

■ Although on remand there will be no impediment to the district court's entry

---

**8.** The People contend that the error in this case should be deemed harmless because the defendant invited constitutional error by specifically objecting to any special verdict forms for first degree murder. The court of appeals rejected this argument, and we do likewise for several reasons. First, it is unclear from the record whether the defendant's objections were directed to the special verdict forms as opposed to a general verdict form or rather to the submission of any form of verdict for first degree murder on the basis of insufficiency of evidence. Indeed, nothing in the record indicates that the trial court submitted the general verdict form merely because of the defendant's objections. Furthermore, as the court of appeals noted,

*People v. Marcy,* 628 P.2d 69 (1981), was decided only after the trial in the present case. We therefore fail to see how the defendant can be said to have invited error by objecting to the verdict form when he was unaware at the time that one of the crimes with which he was charged was constitutionally invalid. Finally, regardless of the scope or nature of the defendant's objection to the verdict forms at trial, the constitutional error present here was not in submitting general or specific verdict forms to the jury, but rather in submitting a constitutionally infirm charge under any form of verdict. Under these circumstances, any objection by the defendant to the special verdict form cannot be viewed as inviting constitutional error.

of a judgment of conviction on the lesser offense of murder in the second degree and in resentencing the defendant for that crime, we believe it appropriate to leave it to the discretion of the prosecution either to retry the defendant for those types of first degree murder originally charged against him, other than extreme indifference murder, or to request the court to resentence the defendant for the lesser offense of second degree murder. We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to return the matter to the district court for further proceedings in accordance with the views herein expressed.

VOLLACK, J., does not participate.