The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Cordell R. JOHNSON, Defendant–Appellant.

No. 93CA1361.

Colorado Court of Appeals, Div. III.

Feb. 15, 1996.

Rehearing Denied March 28, 1996.

Certiorari Denied Sept. 23, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Eric V. Field, Special Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge JONES.

Defendant, Cordell Rufus Johnson, appeals the denial of his Crim P. 35(c) motion attacking his 1990 conviction for first degree assault. We affirm.

## I.

Defendant contends that the first degree assault statute, § 18–3–202(1)(c), C.R.S. (1986 Repl.Vol. 8B), violates his right to equal protection of the law because it is not sufficiently distinguishable from the second degree assault statute, Colo. Sess. Laws 1971, ch. 121, § 40–3–203 at 420, that was applicable at the time of the offense at issue. We disagree.

The constitutional guarantee of equal protection of the law assures that those who are similarly situated are afforded similar treatment. *People v. Nguyen,* 900 P.2d 37 (Colo.1995); *People v. Mozee,* 723 P.2d 117 (Colo.1986).

Statutes which impose different penalties for what ostensibly might be different conduct, but offer no intelligible standard for distinguishing the proscribed conduct, violate

equal protection. *People v. Marcy,* 628 P.2d 69 (Colo.1981).

■ While the guarantee of equal protection of the law requires statutory classifications of criminal behavior to be based on differences that are real in fact and reasonably related to the general purposes of criminal legislation, the General Assembly may prescribe more severe penalties for conduct it perceives to have more severe consequences, even if the differences are only a matter of degree. *People v. Jefferson,* 748 P.2d 1223 (Colo.1988).

■ In order to withstand an equal protection challenge, a statutory classification must turn on reasonably intelligible standards and be sufficiently coherent and discrete so that persons of average intelligence could reasonably distinguish the conduct proscribed by different statutes. *People v. Marcy, supra.* Furthermore, harsher penalties for crimes committed under different circumstances and in violation of different statutes do not violate equal protection guarantees if the classification is rationally based upon the variety of evils proscribed. *People v. Montoya,* 196 Colo. 111, 582 P.2d 673 (1978).

■ Finally, a statute is presumed to be constitutional and a defendant challenging a statute must prove unconstitutionality beyond a reasonable doubt. *People v. Loomis,* 698 P.2d 1320 (Colo.1985).

### A.

The first degree assault statute, § 18–3–202(1)(c), includes the offense of "extreme indifference" assault, which is defined as occurring when:

Under circumstances manifesting extreme indifference to the value of human life, [a person] knowingly engages in conduct which creates a grave risk of death to another person and thereby causes serious bodily injury to any person.

Extreme difference assault is a class three felony.

The then applicable second degree assault statute, *see* Colo. Sess. Laws 1971, ch. 121, § 40–3–203(1)(a) at 420, prior to its repeal in 1994, *see* Colo. Sess. Laws 1994, ch. 287, § 18–3–203 at 1717, provided:

A person commits the crime of assault in the second degree if:

With intent to cause serious bodily injury to another person, he does cause such injury to any person.

This form of second degree assault was a class four felony prior to repeal of the statute.

In support of his equal protection claim, defendant relies upon the decision of our supreme court in *People v. Marcy, supra.* There, the court addressed similar language in the two statutes defining, respectively, first degree (extreme indifference murder) and second degree murder and sustained a challenge, based on equal protection grounds, to the former. In our view, *People v. Marcy* fails to support defendant's contention.

While the respective homicide and assault statutes do share certain common phrases and legal principles, the *Marcy* case is plainly presented "[i]n the context of criminal homicide." *People v. Marcy, supra,* at 79. Therefore, though reference to the case is instructive, it is not dispositive.

### B.

■ A significant differentiating factor between the two assault statutes is the *mens rea* element. Second degree assault is a specific intent crime while extreme indifference assault is a general intent crime, requiring a "knowing" culpable mental state as to three sets of conduct. Arguably, the lesser offense here carries the more culpable mental state. *See People v. Bramlett,* 194 Colo. 205, 573 P.2d 94 (1977); *People v. Suazo,* 867 P.2d 161 (Colo.App.1993). However, when the respective mental states are joined to the *actus reus,* the proscribed conduct, in each respective statute, we conclude that the General Assembly could rationally have perceived that the crime described in the first degree assault statute, demonstrating *extreme* indifference to human life, poses a more substantial evil than that described in the second degree assault statute. Thus, even though the differences may vary only in

a matter of degree, the classification does not violate the guarantees of equal protection.

Second degree assault proscribes the intentional causation of a bodily injury defined by law as constituting a substantial risk of death to the person injured. Section 18–1–901(3)(p), C.R.S. (1986 Repl.Vol. 8B)(" 'Serious bodily injury' means bodily injury which ... involves a substantial risk of death....") On the other hand, extreme indifference first degree assault proscribes one, while exhibiting behavior manifesting extreme indifference to the value of human life, from knowingly engaging in conduct that creates a grave risk of death to another person, and then knowingly causing serious bodily injury or a substantial risk of death to any person that is injured.

Thus, aside from knowingly creating circumstances which manifest extreme indifference to the value of human life, the "knowing" element of extreme indifference assault goes beyond simply the conduct of causing serious bodily injury. It is also the *mens rea* applied to the creation of a grave risk of death to *any person*, not just the person injured.

In addition, the extreme indifference statute refers to the knowing *conduct* creating the grave risk of death, out of which the serious bodily injury flows. This is quite opposite to the second degree assault statute which is based simply on the conscious object—or intent—to cause the *result*—serious bodily injury. *See People v. Marcy, supra.*

We conclude that these differences in language, and the nuances therefrom, constitute statutory discreteness in culpability that renders the statutes categorically distinct and different based on real elements of *mens rea* and conduct.

## II.

Defendant next contends that the district court erred in denying his Crim. P. 35(c) motion because there was insufficient evidence to convict him of extreme indifference first degree assault. Specifically, he argues only that the evidence was insufficient to support a finding beyond a reasonable doubt that he knew his actions created a grave risk of death to another person. We disagree.

When sufficiency of the evidence is the basis for an appeal of a jury verdict, we must determine whether the evidence, when viewed as a whole and in a light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988). In addition, the prosecution must be given every reasonable inference which can be fairly drawn from the evidence. *People v. Gonzales,* 666 P.2d 123 (Colo.1983).

Furthermore, the determination of the credibility of the witnesses is solely within the province of the fact finder, *People v. Franklin,* 645 P.2d 1 (Colo.1982), and an appellate court may not sit as a thirteenth juror and set aside a verdict because it might have reached a different conclusion. *Kogan v. People, supra.*

Finally, in a Crim. P. 35(c) proceeding, there is a presumption of validity which attaches to the conviction and the defendant must establish his right to relief by a preponderance of the evidence. *People v. Naranjo,* 840 P.2d 319 (Colo.1992).

The record reflects that a witness who was very near the victim during the assault identified defendant as the primary attacker in the beating. The witness testified that defendant and a friend punched and kicked the victim until he lay semi-conscious on the floor within inches of a ledge. The witness testified that defendant started to walk away, but then returned and punched the victim in the head, whereupon the victim moaned, rolled over, fell off the ledge, plummeted 25 feet, and broke his spinal cord.

The jury was properly instructed that a person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result. By finding defendant guilty of first degree assault, the jury must necessarily have found that, when defendant returned and punched the victim in the head as he lay semi-conscious along the ledge, he knew that his actions were practically certain

to cause a grave risk of death, whether from that blow as the victim lay with his head against the concrete floor, or from a fall, or both.

Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could find beyond a reasonable doubt that defendant's actions were done with full knowledge and awareness of the probable result.

## III.

Defendant finally contends that the reviewing court erred in denying his Crim. P. 35(c) motion because the trial court failed to instruct the jury adequately on the elements of first degree assault during his trial. We disagree.

Defendant argues that the trial court erred in failing to define the phrases "extreme indifference" and "grave risk of death" in its instructions to the jury. Since defendant did not object at trial to the instructions, they are subject to review under the plain error standard.

Plain error occurs when, after review of the entire record, a reviewing court can say with fair assurance that the error so undermined the fundamental fairness of the trial so as to cast serious doubt on the reliability of the conviction. *Wilson v. People,* 743 P.2d 415 (Colo.1987). Furthermore, instructional errors, as a general rule, do not constitute fundamental error that would provide a basis for collateral attack. *People v. Shearer,* 181 Colo. 237, 508 P.2d 1249 (1973).

In *People v. Marcy, supra,* 628 P.2d at 79, our supreme court stated that "'grave' is *commonly* understood to mean serious or imminent, or likely to produce great harm or danger." (emphasis added) Likewise, the phrase "extreme indifference" uses common words and is generally understood to mean a total lack of concern or caring. Since the jury indicated no confusion about the meaning of the common phrases, we conclude that the trial court's failure specifically to define them does not necessitate a new trial.

Accordingly, the district court's denial of defendant's Crim. P. 35(c) motion is affirmed.

RULAND and BRIGGS, JJ., concur.