The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

William P. VERSTEEG, Defendant–Appellant.

No. 04CA1227.

Colorado Court of Appeals, Div. V.

Nov. 2, 2006.

Certiorari Granted Aug. 27, 2007.

John W. Suthers, Attorney General, Denver, Colorado; Kathleen M. Byrne, Special Assistant Attorney General, Boulder, Colorado, for Plaintiff–Appellee.

Anne Whalen Gill, P.C., Anne Whalen Gill, Castle Rock, Colorado, for Defendant–Appellant.`

Opinion by Judge RUSSEL.

Defendant, William P. Versteeg, appeals the trial court's order denying his motion for postconviction relief. We reverse and remand with directions.

## I. Background

Defendant shot and killed his female roommate during an argument about her involvement with another man. During the incident, he also pointed the gun at the other man. He was tried on charges of murder and attempted murder.

Defendant testified that he and his roommate had been involved in a romantic relationship. He recalled that, on the day of the shooting, he began drinking in the morning and continued drinking throughout the day. When he returned home, he entered the roommate's bedroom and suspected that she had slept with someone. Defendant testified that he was "very hurt, and angry," and he tore down a curtain, punched a hole in a wall, and stabbed the roommate's waterbed with a knife. Defendant then fell asleep on the couch.

Defendant testified that he woke when the roommate entered the house with. a man. Defendant assumed that the man was "probably who [the roommate] had been sleeping with that night," and he demanded that the man leave. When the man refused, defendant retrieved a loaded shotgun and pointed it at him. Defendant testified that the shotgun accidentally discharged when his roommate intervened. He denied trying to shoot anyone.

The jury convicted defendant of first degree murder and attempted first degree murder. On appeal, a division of this court affirmed the convictions. *People v. Versteeg*, (Colo.App. No. 98CA1140, Dec. 2, 1999) (not published pursuant to C.A.R. 35(f)) (*Versteeg I*). The supreme court denied certiorari.

In January 2004, defendant filed an amended motion for postconviction relief under Crim. P. 35(c). He asserted three substantive postconviction claims:

1. The trial court committed plain error when it gave an erroneous jury instruction on, and allowed the prosecutor to make erroneous statements about, self-induced intoxication under § 18–1–804(1), C.R.S.2006.

2. Defendant was denied the effective assistance of counsel because his trial attorney made the following errors:

 a. Counsel failed to request an instruction on heat of passion and failed to obtain defendant's personal presence when the instructions were drafted.

 b. Counsel failed to investigate potential witnesses who had volunteered to testify on defendant's behalf.

 c. Counsel failed to object to specific arguments made by the prosecutor and to allege instances of prosecutorial misconduct.

 d. When the jury indicated that it was deadlocked, counsel failed to request the procedures set forth in *People v. Lewis*, 676 P.2d 682, 689 (Colo.1984).

 e. Counsel failed to present certain information in support of defendant's motion to suppress statements.

3. Defendant was denied the effective assistance of counsel because his appellate attorney failed to present the following arguments on direct appeal:

 a. Error in refusing to suppress defendant's statements.

 b. Error in denying a special unanimity instruction.

 c. Ineffective assistance of trial counsel.

The prosecution filed a written reply to defendant's motion addressing some, but not all, of these assertions. The trial court summarily denied defendant's motion "for the reasons in the reply."

## II. General Contention

Defendant now contends that the trial court erred in summarily denying his postconviction motion. We agree, for two reasons.

First, as set forth in Part III of this opinion, defendant was entitled to relief on his first postconviction claim. The trial court committed plain error when it gave an incorrect jury instruction on, and allowed the prosecutor to make erroneous statements about, self-induced intoxication. We reach this conclusion based on a change in the law that occurred after defendant was tried but before his conviction was final.

Second, as set forth in Part IV of this opinion, the trial court did not sufficiently address defendant's remaining postconviction claims. Although some of defendant's assertions were properly rejected, other assertions require additional findings.

## III. First Postconviction Claim

Defendant contends that his conviction must be reversed for plain error in the instructions and argument concerning self-induced intoxication. We agree.

### A. Pertinent Events

Defendant was tried in March 1998. At the close of evidence, the court instructed the jury, by means of an affirmative defense instruction, that it must acquit defendant of first degree murder and attempted first degree murder if it found that, because of self-induced intoxication, defendant lacked the capacity to form specific intent. The affirmative defense instruction did not mention the element of "after deliberation."

During closing argument, the prosecutor stated that self-induced intoxication is irrelevant to the issue of deliberation:

> [I]t's real important to know that intoxication is only a defense as to this word intent. Intoxication has nothing to do with deliberation.... You don't even have to think about it. The only time

you need to worry about intoxication is where you're seeing this word intent.

. . . .

I emphasize to you that you should only consider intoxication as it goes to this idea here, the intent. It does not go with after deliberation. . . . Intoxication is no defense to the issue of deliberation as a matter of law.

Defendant did not object to the court's instructions or to the prosecutor's statements. Nor did he argue on direct appeal that the instruction or statements constituted reversible error.

■ On the day that it denied certiorari in *Versteeg I*, the supreme court announced *People v. Harlan*, 8 P.3d 448 (Colo.2000). As relevant here, the court observed that § 18–1–804(1) is "an evidentiary rule permitting the introduction of evidence of voluntary intoxication to negate the requisite specific intent of the charged offense." *People v. Harlan, supra*, 8 P.3d at 471.

■ This observation informed two related determinations:

1. Evidence of self-induced intoxication bears on whether the defendant *in fact* had the specific intent of the charged offense, not whether the defendant merely had the *capacity* to form specific intent. *People v. Harlan, supra*, 8 P.3d at 471–72.

2. Evidence of self-induced intoxication bears on whether the defendant acted after deliberation. *People v. Harlan, supra*, 8 P.3d at 475.

In January 2004, defendant filed his amended Crim. P. 35(c) motion, claiming that the court's jury instruction and the prosecutor's statements constituted plain error under *Harlan*.

## B. Procedural Posture

We first consider whether we may reach the merits of defendant's first postconviction claim. We perceive no obstacle:

1. The claim is timely. Defendant was convicted of first degree murder, a class one felony, and attempted first degree murder, a class two felony.

Although a class one felony may be challenged at any time, defendant was required to challenge his attempted murder conviction within three years of the conclusion of his direct appeal. *See* § 16–5–402(1), C.R.S.2006; *People v. Hampton*, 876 P.2d 1236, 1240 (Colo.1994). Here, defendant's initial Crim. P. 35(c) motion was filed within three years of the conclusion of *Versteeg I*.

2. Because defendant's amended Crim. P. 35(c) motion was filed before July 1, 2004, the claim is not subject to the automatic procedural bars set forth in the amended Crim. P. 35(c)(3)(VII).

3. The prosecution did not assert that the claim was forfeited for abuse of process. *See People v. Rodriguez*, 914 P.2d 230, 253 n. 20 (Colo.1996) (approving ABA Standard for Criminal Justice § 22–6.1, under which "abuse of process is an affirmative defense to be pleaded by the respondent").

## C. Standard of Review

■ What is the standard of review for a postconviction claim that is based on an assertion of unpreserved trial error?

In federal court, the answer to this question is clear: "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982).

The answer is less clear in Colorado. The supreme court has never squarely addressed the issue, and the relevant cases are inconsistent.

In *People v. Shearer*, 181 Colo. 237, 508 P.2d 1249 (1973), the court held that a particular instructional error did not warrant postconviction relief. In reaching this conclusion, the court suggested that unpreserved errors should be evaluated in postconviction proceedings under a standard of review different from that applicable on direct appeal:

If the failure to properly instruct the jury had been properly raised at the time of trial or in a motion for a new trial or on appeal, we might well have reversed and ordered a new trial. However, we do not have the matter before us on appeal. This proceeding is not a direct appeal, but a proceeding to review a Crim. P. 35[ (c) ] motion and hearing for post-conviction relief.

*People v. Shearer, supra,* 181 Colo. at 244, 508 P.2d at 1253.

■ Since announcing *Shearer,* the court has clarified that postconviction claims must be based on errors of constitutional magnitude. *See People v. Rodriguez, supra,* 914 P.2d at 254 (citing *People v. Shearer, supra* ). And it has recognized that society's interest in the finality of convictions acquires "enhanced significance" in postconviction proceedings. *See Edwards v. People,* 129 P.3d 977, 982 (Colo.2006). But the court has never developed a separate postconviction standard for evaluating unpreserved trial errors.

Instead, the court has granted postconviction relief for unpreserved errors by reference to standards that would have applied on direct appeal. For example, in *People v. Rodriguez, supra,* 914 P.2d at 273, the court granted postconviction relief because a deficient jury instruction constituted "plain error." And in *Crespin v. People,* 721 P.2d 688 (Colo.1986), the court granted relief for "constitutional error" where a general verdict was arguably based on a theory of liability that was declared, after trial, to be unconstitutional.

Divisions of this court have similarly reviewed unpreserved postconviction claims for "plain error" without expressly considering alternative standards. *See, e.g., People v. Dunlap,* 124 P.3d 780, 809–14 (Colo.App. 2004); *People v. Johnson,* 923 P.2d 342, 347 (Colo.App.1996); *People v. Hampton,* 857 P.2d 441, 445–46 (Colo.App.1992), *aff'd,* 876 P.2d 1236 (Colo.1994).

We conclude that when a postconviction claim is properly presented for evaluation on the merits but is premised on trial error that was not preserved by a contemporaneous objection, Colorado courts must review the claim for plain error, employing the prejudice test articulated in *Wilson v. People,* 743 P.2d 415, 420 (Colo.1987). Under this standard, the defendant must identify (1) an error, (2) that is plain, and (3) so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See People v. Miller,* 113 P.3d 743, 750 (Colo.2005); *Wilson v. People, supra.*

We recognize that the plain error standard was designed for use on direct appeal and that the federal "cause and prejudice" standard was designed for use in collateral attacks. *See United States v. Frady, supra,* 456 U.S. at 164–67, 102 S.Ct. at 1592–94. But in the absence of further guidance from the Colorado Supreme Court, we conclude that the cause and prejudice standard is not a viable option for us. The supreme court has been aware of the *Frady* decision for many years, *see, e.g., People v. Wiedemer,* 852 P.2d 424, 431 n. 8 (Colo.1993), but it has shown no inclination to adopt the federal standard. Indeed, the court implicitly rejected *Frady* when it employed the plain error standard in *People v. Rodriguez, supra,* 914 P.2d at 273.

Moreover, we do not discern that the federal standard would be easier to apply than the plain error standard, or that it would yield fairer results. In our view, the plain error standard will work in harmony with Colorado's current rules to yield results that are similar to those that would be obtained under the cause and prejudice standard. Our assessment is based on two observations.

First, under the amended Crim. P. 35(c)(3)(VII), Colorado courts must reject any postconviction claim that "could have been presented in an appeal previously brought," unless the defendant shows that the claim fits within certain exceptions. This rule serves the same function as the inquiry into "cause" under the federal standard. *See, e.g., McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir.2001) (rejecting claim as procedurally defaulted because defendant did not show cause for his failure to raise the issue on direct appeal).

Second, although the federal standard theoretically requires a higher degree of preju-

dice than is required for plain error, *see United States v. Frady, supra,* 456 U.S. at 166, 102 S.Ct. at 1593, the tests are alike in practice. Both standards are substantially similar to the "reasonable probability" test that governs postconviction claims of ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), or suppression of material exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963):

· Under the cause and prejudice standard, a defendant must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady, supra,* 456 U.S. at 170, 102 S.Ct. at 1596. However, a court rarely has access to evidence about the *actual* effect that a particular event had on the jury's deliberations. *See* Fed.R.Evid. 606(b); CRE 606(b). Thus, a showing of "actual prejudice" under *Frady* generally depends on an inference that the error affected the outcome. This is the same showing of prejudice that is required for *Strickland* or *Brady* errors. *See United States v. Hernandez,* 94 F.3d 606, 610 (10th Cir.1996) ("There appears to be little or no difference in the operation of the 'materiality' *(Brady)* and 'prejudice' *(Frady* ) tests."); John C. Jeffries, Jr. & William J. Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus,* 57 U. Chi. L.Rev. 679, 684–85 n. 25 (1990) ("Both *Frady* and *Strickland* link 'reasonable probability' of affecting outcome with due process notions of fundamental fairness.").

· Under the plain error standard, a defendant must show that the error casts "serious doubt on the reliability of the judgment of conviction." *Wilson v. People, supra,* 743 P.2d at 420. This too is the same showing of prejudice that is required for *Strickland* or *Brady* errors. *See Strickland v. Washington, supra,* 466 U.S. at 694, 104 S.Ct. at 2068 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (same). The tests are so closely related that the Supreme Court has adopted the reasonable probability test as the measure of prejudice for plain error claims based on imperfect guilty plea advisements:

We hold, therefore, that a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under [Fed.R.Crim.P.] 11, must show a reasonable probability that, but for the error, he would not have entered the plea. A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is " 'sufficient to undermine confidence in the outcome' " of the proceeding.

*United States v. Dominguez Benitez,* 542 U.S. 74, 83, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004) (quoting *Strickland v. Washington, supra,* 466 U.S. at 694, 104 S.Ct. at 2068; *United States v. Bagley, supra,* 473 U.S. at 682, 105 S.Ct. at 3383 (opinion of Blackmun, J.) ).

Because the prejudice component of the plain error standard is similar to the reasonable probability test that trial and appellate courts regularly use to evaluate postconviction claims under *Strickland* and *Brady,* we conclude that it can be applied fairly and consistently to evaluate postconviction claims of unpreserved trial error.

In reaching this conclusion, we specifically adopt the prejudice formulation articulated in *Wilson v. People, supra,* and reject the test articulated in *People v. Garcia,* 28 P.3d 340 (Colo.2001). The *Garcia* test, which is often used to evaluate defective jury instructions on direct appeal, requires the defendant to show (1) that the error "affected a substantial right," and (2) a "reasonable possibility" that the error contributed to the conviction. *People v. Garcia, supra,* 28 P.3d at 344 (quot-

ing *Bogdanov v. People,* 941 P.2d 247, 255–56 (Colo.1997)).

The *Garcia* test is unworkable in postconviction proceedings for two reasons. First, it is internally inconsistent: One cannot demonstrate that an error affects substantial rights merely by showing a reasonable *possibility* of prejudice. *See United States v. Dominguez Benitez, supra,* 542 U.S. at 81–82, 124 S.Ct. at 2339 (installing the reasonable *probability* test as the measure of whether an error affects substantial rights). Second, society's interest in the finality of convictions would be undermined if postconviction relief were triggered by a mere reasonable *possibility* of prejudice. "[P]ostconviction proceedings have a dual purpose: to prevent constitutional injustice and to bring finality to judgment." *People v. Rodriguez, supra,* 914 P.2d at 252. This dual purpose would not be advanced by awarding postconviction relief for unpreserved trial errors under a standard that requires less prejudice than is required for postconviction relief under *Strickland* or *Brady.*

We note that other divisions of this court have employed the *Wilson* test, rather than the *Garcia* test, when reviewing plain error claims of instructional error in postconviction proceedings. *See People v. Johnson, supra,* 923 P.2d at 347; *People v. Hampton, supra,* 857 P.2d at 445.

### D. Analysis

Based on our review of the record, we conclude that the jury instruction and the prosecutor's statements constituted plain error.

### 1. There Was Error

There is no question that, if defendant were tried today, the court's jury instruction and prosecutor's statements would be erroneous under *Harlan:* (1) the instruction improperly focused on whether, as a result of self-induced intoxication, defendant lacked *the capacity* to form specific intent, instead of whether he *in fact* formed specific intent; (2) the instruction failed to indicate that the jury must consider evidence of self-induced intoxication in determining whether defendant acted "after deliberation"; and (3) the

prosecutor exacerbated the instruction's deficiency by telling the jury that intoxication was irrelevant to the element of deliberation. *See People v. Garcia, supra,* 28 P.3d at 346 (prosecution's comments during closing argument exacerbated errors in the jury instructions). The issue is whether the instruction and statements may be regarded as erroneous under *Harlan* when that case was announced two years after the conclusion of defendant's trial. We conclude that they may.

The People argue that *Harlan* does not apply retroactively. They acknowledge that new rules of substantive law apply retroactively, *see Schriro v. Summerlin,* 542 U.S. 348, 352–53, 124 S.Ct. 2519, 2522–23, 159 L.Ed.2d 442 (2004), but they assert that *Harlan's* rule was procedural because it interpreted a procedural statute. *See People v. Harlan, supra,* 8 P.3d at 471 (section 18–1–804(1) is an "evidentiary rule"); cf. *State v. Lo,* 264 Wis.2d 1, 665 N.W.2d 756 (2003) (decision interpreting the "imperfect self-defense" statute announced a procedural rule). Accordingly, the People argue that *Harlan* is subject to the general rule of nonretroactivity set forth in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Edwards v. People, supra,* 129 P.3d at 983 (adopting *Teague* test to determine whether constitutional rules of criminal procedure apply retroactively to cases on collateral review); *see also United States v. Martinez,* 139 F.3d 412, 416–17 (4th Cir.1998) (*Teague* applies to decisions interpreting procedural statutes); *State v. Lagundoye,* 268 Wis.2d 77, 674 N.W.2d 526, 534–35 (2004).

■ We reject the People's argument without deciding whether *Harlan's* rule was substantive or procedural. We conclude that *Harlan* applies retroactively here because it was announced before defendant's conviction became final. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final.").

The supreme court announced *Harlan* and denied certiorari in *Versteeg I* on the same

day—March 27, 2000. Defendant's conviction became final ninety days later, when he could no longer file a petition for writ of certiorari in the United States Supreme Court. *See Caspari v. Bohlen,* 510 U.S. 383, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994); *People v. Johnson,* 142 P.3d 722 (Colo.2006).

We therefore conclude that the jury instruction and comments constituted "error" under *Harlan.*

### 2. The Error Was Plain

■ In *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the Supreme Court announced that, for purposes of a plain error review conducted under Fed.R.Crim.P. 52(b), a trial court's action may be considered "plainly" erroneous, even though it comported with the law in effect at the time of trial. The Court stated that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration." *Johnson v. United States, supra,* 520 U.S. at 468, 117 S.Ct. at 1549.

Relying on *Johnson,* defendant contends that the jury instruction and prosecutor's comments were plainly erroneous because the law at the time of trial was settled and clearly contrary to the law in effect when the trial court considered his postconviction claim. We agree.

We first consider whether *Johnson* is instructive when plain error claims are raised in a collateral attack under Crim. P. 35(c). Because federal courts do not employ the plain error standard of review in collateral proceedings, it is fair to say that *Johnson* was intended to apply only on direct appeal. Nevertheless, we conclude that if Colorado courts are to evaluate postconviction claims under the plain error standard, defendants may rely on *Johnson* to support the contention that the asserted errors are "plain." A contrary conclusion—requiring defendants to demonstrate that errors are "plain" solely by reference to the law in effect at the time of trial—would effectively thwart the retroactive application of any new rule of law, including substantive and watershed rules. *See Schriro v. Summerlin, supra,* 542 U.S. at 352–53, 124 S.Ct. at 2522–23 (new substantive rules apply retroactively); *Beard v. Banks,* 542 U.S. 406, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) (watershed rules are an exception to the general rule of nonretroactivity).

■ We next consider whether the law at the time of trial was "settled and clearly contrary" to the rule announced in *Harlan.* We conclude that it was.

In *People v. Orona,* 907 P.2d 659 (Colo. App.1995), a division of this court concluded that "after deliberation" is not part of the culpable mental state of first degree murder. Consequently, the division held that the jury should not be instructed to consider evidence of self-induced intoxication in determining whether the defendant had acted "after deliberation." *People v. Orona, supra,* 907 P.2d at 662–63.

Following the denial of certiorari review, *Orona* stood as controlling precedent for five years. Thus, when the supreme court announced *Harlan* and disapproved of *Orona,* the decision represented a clear departure from settled law. *See People v. Harlan, supra,* 8 P.3d at 474.

Because *Harlan* did not merely clarify unsettled law, we do not consider whether the instructions and comments were plainly wrong at the time of trial. *See People v. O'Connell,* 134 P.3d 460, 464–65 (Colo.App. 2006) (evaluating a contention of plain error where the law was unsettled at the time of trial). Instead, as guided by *Johnson,* we apply the rule announced in *Harlan* and conclude that the instructions and comments constituted error that was "plain."

### 3. The Error Undermined Fundamental Fairness

At trial, there was compelling evidence of intoxication. Defendant testified that he had been drinking all day and was drunk at the time of the shooting. The police officer who arrested defendant testified that defendant's eyes were watery and bloodshot and that he smelled of alcohol. On the basis of blood samples taken after the incident, a forensic toxicologist testified that, at the approximate time of the shooting, defendant's blood would

have contained between .17 and .18 grams of ethyl alcohol per hundred milliliters of blood.

In contrast, evidence on the issue of deliberation was contested and not overwhelming. Indeed, it appears that the jury struggled with this issue because, after informing the court that it was deadlocked, the jury asked for further guidance on the meaning of "deliberation."

We conclude that the erroneous instruction and comments prevented the jury from determining whether, in light of self-induced intoxication, defendant acted "after deliberation." In view of the evidence presented at trial, we further conclude that the absence of a jury determination on this issue so undermined the fundamental fairness of the trial that it casts serious doubt on the reliability of the judgment of conviction.

Therefore, the trial court erred in denying this claim, and the judgment of conviction must be reversed.

### E. Remedy

On the basis of defendant's first postconviction claim alone, subject to further relief as discussed in Part IV, the trial court shall either (1) order a new trial on the charges of first degree murder and attempted first degree murder or (2) enter a judgment of conviction for second degree murder and attempted second degree murder and resentence defendant on those lesser offenses. The People shall select the remedy. *See People v. Sepulveda*, 65 P.3d 1002, 1008 (Colo.2003); *Crespin v. People, supra*, 721 P.2d at 693.

### IV. Remaining Postconviction Claims

We now consider whether defendant is entitled to further relief on the basis of his remaining postconviction claims. We undertake this inquiry because these remaining claims, if valid, could entitle defendant to a new trial notwithstanding the People's willingness to accept a judgment on the lesser offenses of second degree murder and attempted second degree murder. Additionally, even if the People elect to retry defendant under Part III.E of this opinion, some of the issues may arise on retrial.

Our examination proceeds in three parts: (A) we first address assertions that were properly rejected by the trial court; (B) we next address assertions that were properly rejected for reasons other than those identified by the trial court; and (C) we then identify assertions that require additional action by the trial court.

### A. Assertions Properly Rejected

The trial court properly rejected the following assertions for the reasons stated in the prosecution's reply.

#### 1. Defendant's Claim 2(d): *Lewis* Procedures

Defendant claimed that trial counsel was ineffective because, when the jury was deadlocked, he failed to request the procedures outlined in *People v. Lewis, supra*, 676 P.2d at 689. The prosecution argued that this issue had been resolved on direct appeal, and the trial court adopted the prosecution's reasoning in its order.

The trial court's ruling was correct.

■ A defendant may not use Crim. P. 35 to relitigate an issue that was resolved on direct appeal. *DePineda v. Price*, 915 P.2d 1278, 1281 (Colo.1996); *People v. Johnson*, 638 P.2d 61, 63 (Colo.1981); *see also* Crim. P. 35(c)(3)(VI) (under version of the rule effective July 1, 2004, the court shall, with certain exceptions, "deny any claim that was raised and resolved in a prior appeal or postconviction proceeding on behalf of the same defendant").

Here, defendant's assertion is merely a reformulation of a claim that was rejected on direct appeal. In *Versteeg I*, the majority acknowledged defendant's complaint about the lack of a *Lewis* inquiry but found no reversible error. Defendant's postconviction motion relied on the same underlying facts and did not allege any prejudice beyond that which was considered and rejected on direct appeal.

#### 2. Defendant's Claim 3(b): Unanimity Instruction

Defendant claimed that appellate counsel was ineffective because she overlooked an

argument—namely, that the trial court erred when it (1) refused to require the prosecution to elect between theories of direct intent and transferred intent and (2) thereafter refused to give the jury a modified unanimity instruction. The prosecution resisted this claim on the ground that the omitted argument was legally meritless, and the trial court agreed.

The trial court's ruling was correct. Appellate counsel was not ineffective because the argument, if raised, would have been rejected under established law.

 Specific intent is an element of first degree murder. *See* § 18–3–102(1)(a), C.R.S. 2006. This element may be satisfied by evidence of direct intent or transferred intent. *See People v. Candelaria*, 107 P.3d 1080, 1091 (Colo.App.2004) (*cert. granted* Mar. 7, 2005) (first degree murder statute incorporates the doctrine of transferred intent).

 Where evidence supporting the charges arises from a single transaction, neither election nor a modified unanimity instruction is required. *See People v. Collins*, 730 P.2d 293 (Colo.1986); *People v. Hanson*, 928 P.2d 776 (Colo.App.1996). Thus, as long as the jurors unanimously agreed that specific intent was proved beyond a reasonable doubt, further agreement was unnecessary. *See People v. Lewis*, 710 P.2d 1110, 1116 (Colo.App.1985) (jurors need not agree as to the evidence that is probative on a specific element, particularly where the evidence supports alternative theories).

### B. Affirmed on Other Grounds

We conclude that the following assertions were properly rejected for reasons not identified by the trial court. *See White v. Ricketts*, 684 P.2d 239, 242 (Colo.1984) (affirming the denial of habeas corpus claims for reasons different from those expressed by the trial court).

#### 1. Defendant's Claim 2(c): Failure to Object

Defendant claimed that trial counsel performed ineffectively by failing to object to (1) the court's jury instruction defining the defense of intoxication and the prosecutor's statement that the jury could not consider

evidence of intoxication in determining whether defendant had acted after deliberation, and (2) various other statements made during the prosecution's closing argument.

In light of our conclusion in Part III, we need not address the failure to object to the court's instruction or the prosecutor's statements regarding the defense of intoxication. And we conclude that defendant's remaining contention does not, as a matter of law, support a claim of ineffective assistance of counsel under the governing standard. *See Strickland v. Washington, supra,* 466 U.S. at 687, 104 S.Ct. at 2065. In light of the evidence presented, the complained-of statements in closing were either proper or insignificant.

#### 2. Defendant's Claim 3(c): Failure to Argue Ineffective Assistance

 Defendant claimed that his appellate counsel erred by failing to argue that trial counsel was ineffective. This claim fails as a matter of law because ineffective assistance claims should not be raised for the first time on direct appeal. *See Ardolino v. People*, 69 P.3d 73, 77 (Colo.2003); *People v. Thomas*, 867 P.2d 880, 886 (Colo.1994); *see also United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir.1995).

### C. Claims Requiring Remand

The following allegations cannot be resolved without factual findings by the trial court.

- Claim 2(a): Trial counsel failed to request an instruction on heat of passion.

- Claim 2(b): Trial counsel failed to investigate specific witnesses who had volunteered to testify on defendant's behalf.

- Claim 2(e): Trial counsel failed to present certain information in support of defendant's motion to suppress statements.

- Claim 3(a): Appellate counsel failed to argue that the trial court erred in refusing to suppress defendant's statements. (We are unable to evaluate this assertion because we do not have the necessary transcripts on appeal.)

On remand, the court shall determine whether defendant is entitled to relief on the basis of these assertions and shall support its ruling by appropriate findings and conclusions. *See People v. Breaman,* 939 P.2d 1348, 1352 (Colo.1997); *see also People v. Simons,* 826 P.2d 382, 383 (Colo.App.1991). If necessary, the trial court shall conduct an evidentiary hearing. *See White v. Denver Dist. Court,* 766 P.2d 632 (Colo.1988).

If the trial court concludes that defendant's remaining assertions do not warrant postconviction relief, the court shall ascertain whether the People seek entry of judgment on the lesser offenses of second degree murder and attempted second degree murder. If the People so elect, the court shall enter judgment on the lesser offenses and resentence defendant (subject to defendant's right to appeal from the order resolving the remaining assertions and the sentence imposed on the lesser offenses). If the People decline such relief, the court shall enter an order directing that defendant be retried on the original charges (subject to defendant's right to appeal from the order resolving his remaining assertions).

If the trial court concludes that defendant is entitled to a new trial on the basis of his remaining assertions, the People shall be precluded from obtaining an entry of judgment on the lesser offenses, and defendant shall be retried on the original charges (subject to the People's right to appeal from the order resolving the remaining assertions).

If the trial court's rulings result in the suppression of evidence prior to retrial, the People may pursue appellate relief under C.A.R. 4.1.

The order is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge WEBB and Judge HAWTHORNE concur.